**James R. COLSON**

v.

**STATE of Maine.**

Supreme Judicial Court of Maine.

Argued May 7, 1985.

Decided Oct. 2, 1985.

Greenberg & Greenberg, Stanley F. Greenberg (orally), Portland, for plaintiff.

James E. Tierney, Atty. Gen., James A. McKenna Asst. Atty. Gen. (orally), Augusta, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, WATHEN and SCOLNIK, JJ.

ROBERTS, Justice.

James R. Colson appeals from a judgment of the Superior Court, Cumberland County, denying his petition for post-conviction review, 15 M.R.S.A. §§ 2121–2132

(Supp.1984). Colson alleges that procedural due process under the Fourteenth Amendment of the United States Constitution and article I, section 6–A of the Maine Constitution requires that an indigent defendant have a right to court-appointed counsel in a hearing necessitated by his failure to pay a fine previously imposed. We affirm the Superior Court's denial of Colson's petition.

## I.

On or about December 28, 1981 Colson was convicted in District Court of operating a motor vehicle after suspension of his license, 29 M.R.S.A. § 2184 (1978 & Supp. 1984). He was fined $350 and ordered to pay that amount in monthly installments on dates that Colson requested. The last payment of $50 was due on May 3, 1982. On February 8, 1983 a hearing pursuant to 17–A M.R.S.A. § 1304 (1983) [1] was conducted. At the conclusion of the proceedings, Colson was committed to the county jail until the fine was paid with credit at $10 per day for the time served. The record discloses neither a request for, nor a waiver of, court-appointed counsel at the section 1304 hearing.

On or about February 9, 1983 Colson appealed to the Superior Court from the District Court's judgment and order of commitment. The commitment was stayed and Colson was admitted to bail by the District Court. The Superior Court affirmed the judgment on August 16, 1983, and notice of appeal to this Court was filed on September 1, 1983. In *State v. Colson,* 472 A.2d 1381 (Me.1984), however, we dismissed Colson's appeal, ruling that an "order of commitment for nonpayment of a fine pursuant to 17–A M.R.S.A. § 1304 is reviewable only on post-conviction review, and not on direct appeal from that order." *Id.* at 1382.

At the post-conviction proceeding and at oral argument before us, Colson, through his appointed counsel, expressly waived two issues: (1) whether the District Court correctly inquired of his ability to pay the fine when originally imposed as mandated by 17–A M.R.S.A. § 1302 (1983); [2] and (2) whether his default in payment of the fine was "excusable" pursuant to the language of section 1304. Colson thus seeks to isolate the constitutional issue raised by his petition, and thereby to present the narrow question whether the absence of court-appointed counsel in a section 1304 proceeding constitutes a *per se* violation of his constitutional rights. We decline to adopt such an absolute rule in this case.

## II.

Colson urges that *Argersinger v. Hamlin,* 407 U.S. 25, 37, 92 S.Ct. 2006, 2012, 32

---

1. 17–A M.R.S.A. § 1304 (1983) provides in pertinent part

 1. When a convicted person sentenced to pay a fine defaults in the payment thereof or of any installment, the court, upon the motion of the official to whom the money is payable, as provided in section 1303, or upon its own motion, may require him to show cause why he should not be sentenced to be imprisoned for nonpayment and may issue a summons or a warrant of arrest for his appearance. Unless such person shows that his default was not attributable to a wilful refusal to obey the order of the court or to a failure on his part to make a good faith effort to obtain the funds required for the payment, the court shall find that his default was unexcused and may order him imprisoned until the fine or a specified part thereof is paid. The term of imprisonment for such unexcused nonpayment of the fine shall be specified in the court's order and shall not exceed one day for each $5 of the fine or 6 months, whichever is the shorter. . . .

 2. If it appears that the default in the payment of a fine is excusable, the court may make an order allowing the offender additional time for payment, reducing the amount thereof or of each installment, or revoking the fine or the unpaid portion thereof in whole or in part.

2. 17–A M.R.S.A. § 1302 (1983) provides

 No convicted person shall be sentenced to pay a fine unless the court determines that he is or will be able to pay the fine. In determining the amount and method of payment of a fine, the court shall take into account the financial resources of the offender and the nature of the burden that its payment will impose. No person shall be imprisoned solely for the reason that he will not be able to pay a fine.

L.Ed.2d 530 (1972), which held that "absent a knowing and intelligent waiver, no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial," dictates that he must be allowed the appointment of counsel before he can be committed to jail for his failure to pay a fine. He acknowledges that *Argersinger* was decided in the context of the trial stage of a criminal prosecution,[3] but he argues that *In re Gault*, 387 U.S. 1, 41, 87 S.Ct. 1428, 1451, 18 L.Ed.2d 527 (1967), removes any distinction between "civil" and "criminal" cases in assessing right to counsel issues.[4] *In re Gault*, however, involved a juvenile court proceeding where the issue was whether the child would be found to be "delinquent" and subjected to the loss of his liberty by being committed to a state institution and is therefore inapposite to the case at bar.[5]

## III.

Colson next urges that the decision in *Lassiter v. Department of Social Services*, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981), mandates the necessity for appointment of counsel for indigents in contempt-like proceedings held pursuant to section 1304. In *Lassiter* the Supreme Court declined to order the appointment of counsel in every parental rights termination proceeding, although the Court did discuss a presumption that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical freedom. *Id.* at 27, 101 S.Ct. at 2159. Colson reasons that *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), which held that there is no absolute right to appointed counsel in probation revocation proceedings, in part because of a probationer's already diminished interest in personal liberty, does not compel a contrary result. He contends that because he was not sentenced to any term of imprisonment or subjected to conditions of probation, but only ordered to pay a $350 fine, he had an "undiminished" interest in his personal freedom at the time of his section 1304 hearing, and therefore a right to appointed counsel.

Without determining the precise quantum of Colson's right to due process, we note that he had already been convicted of a crime and therefore was not entitled to the process accorded one merely accused of a crime. Colson's conviction resulted in an order to pay $350 upon a schedule that he

---

3. The *Argersinger* court stated in pertinent part

 The trial of vagrancy cases is illustrative. While only brief sentences of imprisonment may be imposed, the cases often bristle with thorny constitutional questions.

 . . . .

 Beyond the problem of trials and appeals is that of the guilty plea, a problem which looms large in misdemeanor as well as in felony cases. Counsel is needed so that the accused may know precisely what he is doing, so that he is fully aware of the prospect of going to jail or prison, and so that he is treated fairly by the prosecution.

 407 U.S. at 33, 34. The logic of the *Argersinger* opinion is inapplicable to the narrow confines of a "show cause" hearing under § 1304.

4. *Cf. Meyer v. Meyer*, 414 A.2d 236 (Me.1980), in which we held that the defendant was not denied due process of law where he was not given assistance of court-appointed counsel in a support payment arrearage and contempt proceeding because the contempt was civil in nature rather than criminal.

5. *In re Gault* dealt with juvenile delinquency and an offense that, if committed by an adult, would have carried a fine of $5 to $50 or imprisonment in jail for not more than two months, but when committed by a juvenile could lead to his detention in a state institution until he reached the age of 21. The Supreme Court stated:

 The juvenile needs the assistance of counsel to cope with problems of law, to make skilled inquiry into the facts, to insist upon regularity of the proceedings, and to ascertain whether he has a defense and to prepare and submit it. The child "requires the guiding hand of counsel at every step of the proceedings against him."

 387 U.S. at 36, 87 S.Ct. at 1448 (quoting *Powell v. Alabama*, 287 U.S. 45, 69, 53 S.Ct. 55, 64, 77 L.Ed. 158 (1932)). We are unpersuaded by the *Gault* language because of the contrast between the relatively complex nature of the proceeding in that case and the straightforward nature of the section 1304 proceeding in the case at bar.

requested. Although the sentence did not include imprisonment, the imposition of a fine exposed Colson to incarceration pursuant to section 1304 for unexcused default in payment. Thus Colson was deprived only of the conditional liberty dependent upon payment of the fine as ordered. *See Morrissey v. Brewer*, 408 U.S. 471, 480, 92 S.Ct. 2593, 2599, 33 L.Ed.2d 484 (1972).

## IV.

Finally, *Lassiter* adopted the due process balancing test enunciated in *Mathews v. Eldridge*, 424 U.S. 319, 334–35, 96 S.Ct. 893, 902–03, 47 L.Ed.2d 18 (1976), in which private interests, governmental interests, and the risk that the procedure used will lead to erroneous decisions are considered.[6] Colson argues that the private interest at stake, freedom from incarceration, outweighs the state's interest in maintaining the simplified section 1304 procedures. He urges that a lawyer's assistance would ensure that a convicted indigent would not be imprisoned solely for financial inability to pay a fine. Second, he reasons that the risk of an erroneous determination at a section 1304 hearing is enhanced because the State, acting through both its executive and judicial arms, is the moving party.

 The criminal code itself insures that a convicted indigent will not be imprisoned solely for a financial inability to pay a fine. Section 1302 prohibits imposition of a

criminal fine unless the court determines that the convicted person has the ability to pay it. Moreover, section 1304(2) permits the court to order imprisonment only when the convicted person's failure to pay the fine is found to be unexcused.[7] The statutory restrictions of a section 1304 hearing remove the need of an attorney to protect one from imprisonment due to an inability to pay. Indeed, the only stage of a section 1304 hearing at which an attorney could offer assistance would be a determination under subsection 1304(1) whether the petitioner's failure to pay was excusable. The mechanics of a section 1304 hearing, however, are not so legally complex that due process should require an unqualified right to an attorney's assistance.[8] In *Gagnon v. Scarpelli*, 411 U.S. 778, 788, 93 S.Ct. 1756, 1762, 36 L.Ed.2d 656 (1973), the Supreme Court opined that there is no automatic constitutional right to counsel at a probation revocation hearing. The complexities of each case must be examined to determine the necessity of a counsel's assistance. Given the straight-forward nature of the section 1304 hearing, the court should not ordinarily encounter substantial complexities. Serious departures from substantial justice may be appropriately handled on post-conviction review. Moreover, contrary to Colson's assertion, a section 1304 hearing is not, strictly speaking, an adversary proceeding.[9]

---

6. The *Lassiter* Court noted the distinction between "absolute liberty" and "conditional liberty" discussed in *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973) and *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972), and suggested a presumption that the right to appointed counsel arises only when an indigent litigant may be deprived of absolute liberty. The presumption must be measured against the three other elements in the due process decision outlined in *Mathews*:

> [*Mathews*] propounds three elements to be evaluated in deciding what due process requires, *viz.*, the private interests at stake, the government's interest, and the risk that the procedures used will lead to erroneous decisions. We must balance these elements against each other, and then set their net weight in the scales against the presumption

that there is a right to appointed counsel only where the indigent, if he is unsuccessful, may lose his personal freedom.

*Lassiter*, 452 U.S. at 27, 101 S.Ct. at 2159.

7. Otherwise, the court's options are limited to an order allowing additional time to pay, reducing the amount to be paid or revoking the fine in part or altogether.

8. We note, for example, the absence of any direct appeal from section 1304 procedures. The need for an attorney's skills in preserving error for appellate review is therefore absent.

9. *Cf. Danforth v. State Department of Health and Welfare*, 303 A.2d 794 (Me.1973) (attorney assigned to indigent parents in civil neglect proceeding because full panoply of traditional weapons of state are marshalled against defendant parents).

■ Applying the factors set forth in *Mathews*, we hold that in these circumstances Colson did not have a right to court-appointed counsel. He had already been convicted of a crime, and the risk of improper incarceration due to lack of counsel was minimal. Indeed, Colson's counsel does not seek to demonstrate that Colson was in fact illegally incarcerated. Finally, we do not say that appointed counsel will never be required in a section 1304 hearing. Rather, the simplified procedure and absence of complex issues involved in such hearings will normally obviate the need for appointed counsel.

Accordingly, the entry is:

Judgment affirmed.

McKUSICK, C.J., and VIOLETTE, WATHEN and SCOLNIK, JJ., concur.

NICHOLS, Justice, dissenting.

I respectfully dissent. I cannot agree with today's majority when they declare that, even if indigent, James R. Colson had no right to counsel at the 17–A M.R.S.A. § 1304 proceeding where, after he had failed to pay the fine imposed upon him, the District Court decided that his default was inexcusable and committed Colson to jail. Neither can I accept the majority's views that the § 1304 hearing was "not an adversary proceeding" and that it was not a complex one. Most emphatically of all, I reject the inference that with his liberty at stake Colson's right to procedural due process under both state and federal constitutions should somehow be weighed against the expense to the State of providing him with counsel.

At the threshold it must be observed that the § 1304 hearing is not some administrative process. It is a court hearing on a motion—either that of the official to whom the fine was payable or the court's mo-tion—and is no less adversarial than any other show cause proceeding in that court. At this critical juncture a defendant needs the skill of counsel, first to present relevant facts as effectively as the adverse facts are being presented by the party moving against him, next to marshall any viable defense, and finally, where appropriate, to urge on the court a defendant's eligibility for probation or unconditional discharge pursuant to 17–A M.R.S.A. § 1201 *et seq.* Rare indeed is the impecunious defendant who, perhaps with incarceration imminent, knows the relevant law and can effectively act as his own advocate in such a setting.[1]

Under section 1304, the District Court must conclude whether a defendant has shown that his "default was not attributable to a wilful refusal to obey the order of the court or to a failure on his part to make a good faith effort to obtain the funds required for the payment." The mere recitation of what one has, or does not have, for cash in his pocket is not the entire answer. An indigent defendant is not likely to understand the legal decision the court must make, and he may not

> present information about efforts to find employment, general employability, total available resources, and the way these resources were spent in the past. An attorney, understanding the significance of this information, can help the client ferret out the information. An attorney also can document employment difficulties, consult experts if necessary, and explain how [the defendant] has used his available resources in the past.

Hermann and Donahue, *Fathers Behind Bars: The Right to Counsel In Civil Contempt Proceedings,* 14 New Mex.L.Rev. 275, 307 (1984).

---

**1.** It may be observed *in passim* that the *Maine Standards for Criminal Justice* 5.18(3) declare it to be the duty of defense counsel to familiarize himself with sentencing alternatives and to "recommend that sentence which most accurately meets the needs of his client and enhances his liberty." The comparative study of these standards and the A.B.A. Standards for Criminal Justice was "accepted" by the Maine Judicial Council February 14, 1975, but apparently was not acted upon by the Supreme Judicial Court.

Likewise, I differ with those who would argue that because no direct appeal from the section 1304 hearing is authorized by statute there is no need for an attorney's skills in preserving a record of error. I submit that the lack of a direct appeal leads to the opposite conclusion; it emphasizes the importance of careful preparation and full presentation of both facts and law to the court at this hearing.[2]

Indeed section 1304 may sometimes operate in a manner closely resembling that of a civil contempt statute. If at the time of the show cause hearing a defendant has the funds to pay his past-due fine, the coercive nature is evident in that he may be imprisoned if he presents no acceptable excuse for his default. However, he would have the essential right to purge because he could only be imprisoned *"until* the fine or a specified part thereof is paid."* 17-A M.R.S.A. § 1304 (emphasis added); *see Wells v. State,* 474 A.2d 846, 850 (Me.1984). By contrast, a person who at the time of this hearing is indigent does not, by definition, "hold the keys to his own cell." Thus, for the indigent in such situations, only the criminal aspect of punishment is implicated when he is imprisoned. Another criminal aspect of a section 1304 hearing is that it is a consequence of an earlier criminal prosecution.

In *Meyer v. Meyer,* 414 A.2d 236 (Me. 1980), we found no right to counsel at state expense in a civil contempt proceeding, but, citing *Danforth v. State Dep't. of Health and Welfare,* 303 A.2d 794 (Me.1973), we noted that the *Meyer* proceeding had not been initiated by the State. *Id.* 414 A.2d at 238. Under section 1304 either the court or the official to whom the fine is payable is the moving party. Notwithstanding that distinction, the courts of the majority of jurisdictions hold that the right to counsel attaches in civil contempt proceedings involving actual incarceration.[3]

In sum, on this novel issue I reject today's opinion as denying Colson the procedural due process which is guaranteed him both by the Maine Constitution, art. I, section 6-A, and by the counterpart provision of the federal constitution. We have had occasion to observe that due process is a "flexible concept ... with the ultimate objective of guaranteeing fairness in all judicial actions." *Danforth,* 303 A.2d at 797.

The "balancing" analysis of *Lassiter v. Department of Social Services,* 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981), invoked by today's majority, was set forth in light of the possible termination of parental rights and did not involve the deprivation of one's physical liberty. Accordingly, the *Lassiter* court adopted the *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1975), test for determining the requirements of due process, but the *Mathews* decision also did not involve the deprivation of physical liberty. The United States Supreme Court in the latter case had before it the narrow issue of due process rights in an initial termination of Social Security disability benefits. Therefore, both *Lassiter* and *Mathews* are clearly inapposite. For a like analysis of these two cases, *see McNabb v. Osmundson,* 315 N.W.2d 9, 12 (Iowa 1982) (indigent charged with contempt for non-payment of child support).

To Colson's argument that at the time of his section 1304 hearing he had an "undiminished" interest in his personal freedom the Court's response is equally weak in its statement that Colson had already been convicted of a crime and therefore was not entitled to the process accorded one merely accused of a crime. When Colson was convicted of operating a motor vehicle after suspension of his license in District Court he was ordered to pay $350.00 in four installments. At that point Colson's inter-

---

**2.** It should not be overlooked that resort to a show cause proceeding does not relieve the movant of his ultimate burden of proof. *Brennan v. Johnson,* 391 A.2d 337, 338, 339, fn. 1 (Me.1978).

**3.** *See Rutherford v. Rutherford,* 296 Md. 347, 464 A.2d 228, 235 (1983) (citations to federal and state cases).

est in his *personal freedom* was undiminished—he had *not* been sentenced to prison nor had he been placed on probation. The fact of conviction does not, standing alone, bear on his liberty.[4]

Far more persuasive, I suggest, are the United States Supreme Court's opinions in *Argersinger v. Hamlin,* 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972) and *Scott v. Illinois,* 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979) than those relied on by today's majority, which opines that *Argersinger* is not applicable to the show cause hearing under section 1304. When we observe that the features of that hearing are very similar to a contempt proceeding, it is difficult to see how the rule of *Argersinger* could be dismissed so blithely. A number of federal courts have relied on *Argersinger* in declaring that an indigent who *might* be imprisoned for civil contempt must be afforded counsel. *See, e.g., United States v. Anderson,* 553 F.2d 1154, 1156 n. 2 (8th Cir.1977); *In re DiBella,* 518 F.2d 955, 959 (2d Cir.1975); *In re Kilgo,* 484 F.2d 1215, 1221 (4th Cir.1973).

In *Scott,* moreover, the United States Supreme Court explicitly attempted to "resolve a conflict among state and lower federal courts regarding the proper application of [the] decision in *Argersinger.*" 440 U.S. at 368, 99 S.Ct. at 1159. The *Scott* court made clear that in determining whether there is a constitutional right to appointment of counsel the line is to be drawn at *actual imprisonment. Id.* at 373–74, 99 S.Ct. at 1161–62.

The actual imprisonment of Colson at this hearing is a penalty different in kind from the fine which was imposed on him in the earlier District Court disposition of his case. Given the context of Colson's case, our Court does not need to extend its holding beyond the actual imprisonment standard, and I do not propose to go further.[5]

The majority, on its part, has failed to offer any rationale for rejecting the actual imprisonment standard announced in *Scott.* On my part, I would adopt that standard. Procedural due process required, I submit, that if Colson had been found indigent he would have been entitled to counsel at the § 1304 hearing where he was sent off to jail.

---

**4.** The reasoning of *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), leading ultimately to the conclusion that under the federal constitution there is no absolute right to counsel in *probation revocation* proceedings, was based on the critical fact that the probationer, on a conditional sentence suspension, held a diminished interest in his personal liberty.

**5.** Notwithstanding that this is a procedural due process case, we should not overlook the protec-

tion afforded indigent defendants by the Sixth Amendment decisions of the United States Supreme Court because in actual imprisonment cases that Court appears to make no distinction between a Sixth Amendment right to counsel and a Fourteenth Amendment right to counsel. Illustratively, *see Mempa v. Rhay,* 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336 (1967) (counsel must be afforded at a deferred sentencing).