### Sherry Russell v. John Armitage

[697 A.2d 630]

No. 95-364

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed May 2, 1997

*Agnes S. Hughes*, Child Support Collections Attorney, Rutland, for Vermont Office of Child Support.

*Robert Appel*, Defender General, and *William A. Nelson*, Appellate Attorney, Montpelier, for Defendant-Appellant.

**Gibson, J.** Defendant John Armitage appeals from an order of the Rutland Family Court that ordered him incarcerated for failing to purge himself of civil contempt in this child-support enforcement action. Defendant contends that the court erred by (1) failing to appoint counsel to represent him at the initial contempt hearing; (2) holding him in contempt without first finding that he had the present ability to pay the child support; and (3) imposing a purgative condition so indefinite that he was unable to comply. In addition, the Defender General moves to withdraw as counsel on the ground that the public defender act, 13 V.S.A. §§ 5201-5277, does not authorize assignment of a public defender in a civil contempt proceeding. We affirm the trial court's order of incarceration and deny the motion to withdraw.

Sherry Russell and John Armitage were married in 1980 and divorced in 1986. They have two daughters. The final order of divorce granted custody to plaintiff and ordered defendant to pay child support in the amount of $35 per week per child, with support payments to increase annually by $2 per week per child. Defendant soon fell behind in his support payments, and in 1989 a wage assignment was ordered. In 1992, the Office of Child Support (OCS) brought enforcement proceedings, and the magistrate issued a new

order, which the family court affirmed, entering judgment for accumulated arrearages and setting support at $389 per month. In 1993, OCS filed another petition for contempt. The court again entered judgment for arrearages and renewed the support order.

In March 1994, OCS commenced this enforcement proceeding, alleging once more that defendant had willfully failed to comply with the child-support order. The magistrate issued another order maintaining defendant's support obligation at $389.97 per month, but noted that defendant shortly expected to settle a workers' compensation claim, and accordingly, scheduled a hearing for November 1994 to review the support order. Following the November hearing, the magistrate found that defendant owed child-support arrearages of $28,847.85 and would have the ability to pay the arrearages upon settlement of his workers' compensation claim, but that he had refused to settle the claim because he did not want plaintiff to have the money. Based on these findings, the magistrate referred the matter for contempt proceedings before the family court judge. See 4 V.S.A. § 462(a).

At a December 8, 1994 hearing, the court found that defendant had presented no medical evidence to show that he is unable to work, and had made little effort to find employment or settle his workers' compensation claim. The court concluded that defendant was in contempt of the magistrate's orders but stated that it would allow defendant to purge himself of the contempt before ordering incarceration. In its written order, issued on December 12, 1994, the court set four conditions that defendant was required to satisfy to purge himself of contempt:

1. Defendant shall report to the Vocational Rehabilitation office in Bennington, Vermont no later than December 16, 1994 and get himself enrolled in their program. He shall participate fully in any programming recommended by that agency. He shall provide documentation at the next hearing that he has complied with this order.

2. Defendant shall, no later than December 16, 1994, go to Dr. Block's office and review the results of his MRI test. If Dr. Block is not available due to his schedule to review the MRI results by December 16, 1994, Defendant shall make an appointment by December 16, 1994 to review the test results as soon as possible.

3. Within 14 days of the above review of Defendant's MRI test results, he shall provide a statement from his treating

physician(s) to this Court regarding the nature of his medical condition, his ability to work, and any restrictions on his ability to work.

4. Defendant shall diligently pursue his worker's compensation claim and provide documentation at the next hearing regarding the progress of the claim.

The court further ordered that a hearing be scheduled to monitor defendant's compliance with the court's conditions. Defendant took no appeal from the contempt order.

At a hearing on May 19, 1995, defendant admitted that he had failed to meet with Dr. Block to review his MRI results, and as a result had not obtained an evaluation of his medical condition sufficient to satisfy the second, third, and fourth contempt conditions. Based on defendant's statements, the OCS attorney requested that defendant be incarcerated for failing to purge himself of contempt. The court responded:

Well, before I can consider incarcerating an individual for nonpayment of child support, I have to appoint an attorney to represent [defendant], and I will do that at this point. We will call someone from the public defender's office to come over and talk to you [defendant], before we continue with this hearing.

Following a recess, during which defendant was found to be a financially needy person who qualified for assigned counsel, attorney William Buckman from the Rutland Public Defender's Office appeared in response to the court's call.

After reviewing defendant's circumstances, Mr. Buckman conceded that defendant had not complied with the contempt order but claimed, as his defense, the inability to comply. He requested a continuance to allow him to become more familiar with the case and to amass evidence to support the defense. The court granted a continuance until June 28, 1995 and indicated that the burden would be on defendant to show an inability to comply with the order.

Before the June 28 hearing, Mr. Buckman moved to withdraw as counsel on the ground that the public defender act did not authorize assignment of a public defender to represent a defendant in a civil contempt proceeding. At the hearing, the court denied the motion to withdraw without rationale. Mr. Buckman then stated that he had no evidence to present for the defense. Later, he claimed that defendant had met with the doctor to review the MRI results and presented a

letter from an employer indicating that defendant was currently working for him as a painter. The court found that defendant continued to be in contempt and ordered him incarcerated under 12 V.S.A. § 122. Defendant was told that he could purge himself of contempt by complying with the four conditions of the December order. Mr. Buckman requested clarification of the order, and the court stated that it would accept letters from the people with whom defendant was required to meet indicating that he had complied. The present appeal followed.

## I.

Defendant was entitled to appointment of counsel prior to being incarcerated under our decision in *Choiniere v. Brooks*, 163 Vt. 625, 625, 660 A.2d 289, 289 (1995) (mem.), where we held that the Due Process Clause of the Fourteenth Amendment requires the appointment of counsel in a civil contempt proceeding in which an indigent defendant faces "actual imprisonment." Although the United States Supreme Court has not ruled on this issue, its decisions on related issues compel this result. In *Argersinger v. Hamlin*, 407 U.S. 25, 37 (1972), the Court held that, under the Sixth Amendment to the United States Constitution, "no person may be imprisoned for any offense, whether classified as petty, misdemeanor, or felony, unless he was represented by counsel at his trial." Subsequently, in *Scott v. Illinois*, 440 U.S. 367, 373-74 (1979), the Court clarified *Argersinger*, holding that the Sixth Amendment right to counsel extended only to those criminal defendants faced with "actual imprisonment," not simply "fines or the mere threat of imprisonment." The Court has held that, under the Due Process Clause of the Fourteenth Amendment, a child has a right to counsel in juvenile delinquency proceedings that may result in commitment to an institution, *In re Gault*, 387 U.S. 1, 41 (1967), noting that such proceedings, while denominated civil, are "functionally akin to a criminal trial." *Gagnon v. Scarpelli*, 411 U.S. 778, 789 n.12 (1973). Against this background, we adopted the rule of *Choiniere*, requiring assignment of counsel for indigent defendants in civil contempt proceedings that result in incarceration.

As we noted in *Choiniere*, "the overwhelming majority of other jurisdictions" have reached the same conclusion. 163 Vt. at 626, 660 A.2d at 289. Indeed, every federal circuit court of appeal that has addressed the issue has determined that due process prohibits incarceration of an indigent defendant in a civil contempt proceeding absent appointment of counsel. See, e.g., *Walker v. McLain*, 768 F.2d

1181, 1185 (10th Cir. 1985) (due process requires appointment of counsel for indigent defendant incarcerated in civil contempt proceeding for nonsupport), *cert. denied*, 474 U.S. 1061 (1986); *Sevier v. Turner*, 742 F.2d 262, 267 (6th Cir. 1984) (same); *Ridgway v. Baker*, 720 F.2d 1409, 1415 (5th Cir. 1983) (same); *Henkel v. Bradshaw*, 483 F.2d 1386, 1389 (9th Cir. 1973) (same); see also *United States v. Bobart Travel Agency, Inc.*, 699 F.2d 618, 620-21 (2d Cir. 1983) (defendant entitled to counsel in civil contempt proceeding for failure to produce records that resulted in his incarceration); *United States v. Anderson*, 553 F.2d 1154, 1156 (8th Cir. 1977) (same). And the vast majority of state courts have reached the same result. See, e.g., *McNabb v. Osmundson*, 315 N.W.2d 9, 14 (Iowa 1982); *Mead v. Batchlor*, 460 N.W.2d 493, 504 (Mich. 1990); *McBride v. McBride*, 431 S.E.2d 14, 18 n.2, 20 (N.C. 1993) (listing other state courts).[1]

---

[1] The concurrence would adopt the case-by-case approach to assignment of counsel adopted by the United States Supreme Court in *Gagnon v. Scarpelli*, 411 U.S. 778 (1973). In *Gagnon*, the Court held that due process does not require the state to provide counsel to all indigents in probation or parole revocation hearings, even if they result in incarceration. *Id.* at 788. It concluded that a case-by-case determination of whether counsel is necessary was sufficient to protect due process interests. *Id.* The Court justified its case-by-case approach by the "critical differences between criminal trials and probation and parole revocation hearings," *id.* at 788-89, the main difference being that "'[r]evocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty'" of the parolee or probationer. *Id.* at 781 (quoting *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972)). The Court viewed a revocation proceeding as differing significantly from a criminal trial because the "State is represented, not by a prosecutor, but by a parole officer," and the hearing is far less formal than a trial. *Id.* at 789.

The Court also adopted the case-by-case approach to the appointment of counsel for proceedings to terminate parental rights. In *Lassiter v. Department of Social Services*, 452 U.S. 18, 31-32 (1981), the Court rejected a per se right to counsel primarily because there was no potential deprivation of physical liberty, noting that it employs a "presumption that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty." *Id.* at 26-27.

We rejected the case-by-case rule in *Choiniere v. Brooks*, 163 Vt. 625, 660 A.2d 289 (1995) (mem.), a civil contempt proceeding in which the court was considering incarceration. Neither *Lassiter* nor *Gagnon* supports a case-by-case rule in such cases. *Lassiter* is clearly distinguishable because the defendant's physical liberty was not there at issue. See 452 U.S. at 26-27. *Gagnon* is not applicable because the two factors important to the Court therein — the conditional liberty interest of a probationer or parolee and the informality of revocation proceedings — are not present here. See *Ridgway v. Baker*, 720 F.2d 1409, 1413 n.4 (5th Cir. 1983). Incarceration will deprive defendant herein of absolute liberty, not the conditional liberty of the probationer. The fact that defendant may have the key to the jail cell does not lessen the liberty interest. See *Walker v. McLain*, 768 F.2d 1181, 1184 (10th Cir. 1985). Moreover, the attorney for the State who is prosecuting this contempt proceeding is seeking incarceration, making it more like a criminal proceeding than a violation-of-probation hearing. See *Henkel v. Bradshaw*, 483 F.2d 1386, 1389 (9th Cir. 1973) (although contempt proceeding not

## II.

Defendant's main argument concerns the timing of the appointment of counsel in the contempt proceeding. He maintains that he was entitled to counsel at the December hearing in which he was first found in contempt, not just at the June hearing in which the court determined that incarceration was the appropriate coercive measure. According to defendant, the court must appoint counsel for an indigent defendant at the outset of a civil contempt proceeding unless the court excludes the possibility of incarceration. OCS contends that the court correctly appointed counsel at the hearing in which the court considered and ordered defendant's incarceration; thus, counsel was available to aid defendant in meeting his burden of showing that he was unable to comply with the purgative conditions of the December order.

■ Civil contempt for failure to pay child support involves three issues. First, the obligee must show that the obligor violated the court's child-support order. The obligor then has the burden of showing an inability to comply. *Spabile v. Hunt*, 134 Vt. 332, 335, 360 A.2d 51, 52 (1976). If the obligor fails to meet this burden, the court may find him in willful violation of the order and, in the final step, determine appropriate means by which to ensure compliance with the order. See *Bowen v. Bowen*, 471 So. 2d 1274, 1278-79 (Fla. 1985) (explaining "correct procedure for establishing civil contempt in family support matters"). In this case, all three steps were completed twice by the court: at the initial hearing in December and again at the purge hearing conducted in May and June. Defendant was represented by counsel on all three issues at the purge hearing that resulted in the order of incarceration. We find no case indicating that due process requires appointment of counsel at an earlier point in the proceeding. Cf. *Ex parte Gunther*, 758 S.W.2d 226, 226-27 (Tex. 1988) (indigent defendant entitled *by statute* to appointment of counsel at initial hearing in contempt proceeding).

---

criminal, label is not determinative; State is party and court is concerned with possible penal outcome); *Tetro v. Tetro*, 544 P.2d 17, 19 (Wash. 1975) (civil contempt proceeding had trappings of criminal trial where complaint brought by county prosecutor and defendant faced possible imprisonment).

Finally, the opinions adopting the minority position are not persuasive and are diminishing in recent years. For example, *Sword v. Sword*, 249 N.W.2d 88 (Mich. 1976), was overruled by *Mead v. Batchlor*, 460 N.W.2d 493, 504 (Mich. 1990), which adopted the majority position. Similarly, *Jolly v. Wright*, 265 S.E.2d 135 (N.C. 1980), which followed *Sword*, has also been overruled. See *McBride v. McBride*, 431 S.E.2d 14, 19 (N.C. 1993).

The family court first held defendant in civil contempt at the December 8, 1994 hearing, but the court did not order incarceration. Rather, the court advised defendant that he could purge himself of the contempt by satisfying four conditions, and informed him that failure to comply would result in incarceration. We conclude that defendant was not entitled to counsel at this hearing because the court did not consider incarcerating defendant without providing him another opportunity, if necessary, to challenge his ability to comply with the child support orders and the reasonableness of the purge conditions with the aid of counsel. "If the alleged contemnor is only to be 'jaw-boned,' such appointment is not required under the United States Constitution." *McNabb*, 315 N.W.2d at 14; see also *Wilson v. New Hampshire*, 18 F.3d 40, 41 (1st Cir. 1994) (no right to counsel where defendant was held in contempt for failure to pay child support but no order of incarceration resulted). The net result of the December hearing, aside from a finding that defendant was in contempt, was another order prescribing specific steps for defendant to take to purge himself of the contempt.

At the May 19, 1995 hearing, the court questioned defendant and perceived that little had changed since the previous hearing. OCS moved for incarceration. The court then indicated that, before considering incarceration, it was required to appoint counsel for defendant. After a recess, counsel appeared on behalf of defendant. Defense counsel conceded that defendant had failed to comply with the court's December order but claimed he had a defense. Although the court told him that he had the burden of establishing an inability to comply, counsel presented no evidence even after a continuance was granted specifically for the purpose of enabling defendant to amass evidence for his defense. See *Spabile*, 134 Vt. at 335, 360 A.2d at 52 (defendant bears burden to establish facts necessary to justify failure to comply with purgative conditions). The court then held defendant in "continuing contempt," and ordered incarceration to coerce compliance with the December order. We conclude that defendant's right to counsel was fully protected in these proceedings.

While it may have been advisable for defendant to have had counsel at the December hearing, he was not then at risk of losing his liberty, even if the court had imposed arbitrary and unreasonable conditions. After counsel was appointed, the court relitigated three issues: (1) whether defendant had violated the December order, (2) whether he had the ability to comply with the order, and (3) what was the appropriate coercive measure. Thus, defendant had a full opportunity

at the purge hearing prior to confinement to demonstrate, with the assistance of counsel, the impossibility of compliance, if such was the case. This is all that due process requires, and the legal system should not be burdened with an unnecessary requirement for pro bono or state-financed legal services at a preliminary stage of the process.

## III.

Defendant maintains that the court could not hold him in contempt at the December hearing without finding that he had the present ability to pay the child support ordered by the magistrate. We find no merit to this claim. Defendant did not dispute that he had failed to comply with the magistrate's orders. He had the burden of establishing inability to comply. *Spabile*, 134 Vt. at 335, 360 A.2d at 52. The court found that defendant presented no medical evidence that he was unable to work, had made little effort to obtain employment, and had not diligently pursued his workers' compensation claim. Consequently, the court held defendant in contempt, not because he had the present ability to pay the child support, but because he failed to establish an inability to comply with the court's order.

According to defendant, the court should not have held him in contempt but should have ordered him to take specific concrete steps toward obtaining work and settling the workers' compensation claim. He maintains that only after he failed to comply with those specific steps could the court hold him in contempt. But the court has already done just as he proposes. The magistrate imposed specific concrete steps in earlier orders, such as the July 1994 order requiring that defendant telephone OCS every Monday to report on employment prospects for the week and to report any change in address. Defendant did not comply with the nonmonetary provisions he now argues that the court should have imposed. The family court then held defendant in contempt and issued another specific order in December. Finally, in June, the court held him in continuing contempt when he failed to comply or demonstrate an inability to comply with the nonmonetary provisions of the December order. We find no error.

## IV.

Defendant also contends that the fourth purgative condition should be stricken because it is so indefinite that defendant is unable to determine what he must do to comply. He relies on *State v. Pownal Tanning Co.*, 142 Vt. 601, 605, 459 A.2d 989, 991 (1983), in which we

stated that "before a person may be held in contempt for violating a court order, the order should inform him in definite terms as to the duties imposed upon him. The order must be specific and definite so that it leaves no reasonable basis for doubt as to its meaning." *Id.* Condition four states: "Defendant shall diligently pursue his worker's compensation claim and provide documentation at the next hearing regarding the progress of the claim." Upon defense counsel's request, the court clarified the conditions for defendant's release, stating that defendant must submit letters from the people with whom he is required to meet indicating that he has complied with the condition.

Defendant claims that he does not know what steps will suffice to show "diligent pursuit." We find condition four to be specific and definite. Indeed, the Court of Appeals for the Second Circuit applied a strikingly similar test in a civil contempt action: whether the party was *reasonably diligent* and energetic in attempting to accomplish what was ordered. See *United States v. O'Rourke*, 943 F.2d 180, 189 (2d Cir. 1991). It is clear to this Court that defendant's assertion that his seeking counsel to represent him in his workers' compensation case is insufficient to satisfy the condition. He has previously testified that he was thinking about hiring an attorney and had talked to several attorneys about his claim, yet, as the court noted, little has changed over the past several years. We find no need to strike the fourth condition.

## V.

■ The Defender General moves to withdraw as defense counsel, arguing that assignment of a public defender in civil contempt proceedings does not fall within the public defender's statutory responsibilities. As the Defender General acknowledges, the lack of statutory authority does not prevent this Court from mandating assignment of counsel in civil contempt cases where counsel is constitutionally required. See A.O. 4, § 1 ("The circumstance that statutory authority of the right to representation by counsel does not appear to reach the matter involved is not to bar exercise of the inherent power to provide counsel where it may be constitutionally required."). He contends, however, that the authority expressly granted by the Legislature to the Defender General in the public defender act, 13 V.S.A. §§ 5201-5277, precludes assignment of public defenders in civil contempt proceedings.

The public defender act provides that:

A needy person who is being detained by a law enforcement officer without charge or judicial process, or who is charged with having committed or is being detained under a conviction of a *serious crime*, is entitled . . . [t]o be represented by an attorney to the same extent as a person having his own counsel; . . . .

*Id.* § 5231(1) (emphasis added). The act defines "serious crime" to be a felony, a misdemeanor for which a defendant will be sentenced to any period of imprisonment or a fine greater than $1000, or an act committed by a juvenile that would otherwise be a serious crime. *Id.* § 5201. In addition, public defenders may be assigned in certain federal court criminal actions, *id.* § 5203, and in extradition, habeas corpus and other proceedings to obtain release from state penal or mental institutions, as well as in certain proceedings in juvenile court. *Id.* § 5232. The Legislature has also made clear that "[t]he defender general has the primary responsibility for providing needy persons with legal services *under this chapter*," and that "[n]o other official or agency of the state may . . . assign [the defender general] duties in addition to those *prescribed by this chapter*." *Id.* § 5253(a) (emphasis added).

Our goal in interpreting statutes is to effect the intent of the Legislature, which we attempt to discern first by looking to the language of the statute. *State v. Wool*, 162 Vt. 342, 348, 648 A.2d 655, 659 (1994). When the meaning of a statute is plain on its face, we have no need for construction, but rather must enforce it according to its terms. *Paquette v. Paquette*, 146 Vt. 83, 86, 499 A.2d 23, 26 (1985). We conclude from the plain language of the public defender act that the act does not authorize courts to assign civil contempt proceedings to the Defender General even where the trial court considers ordering incarceration. Cf. *Maloney v. Bower*, 498 N.E.2d 1102, 1104 (Ill. 1986) (chief judge of circuit court did not have authority to issue general order directing judges to appoint public defenders to represent indigents in civil contempt proceedings, thus enlarging duties of office of public defender beyond what legislature had provided). Nor does it authorize compensation of appointed counsel to be made from funds appropriated to the Office of the Defender General. Cf. 13 V.S.A. § 5272 (compensation of appointed counsel under public defender act shall be made from appropriations to Office of Defender General).

Although we conclude that the public defender act does not authorize assignment of a public defender in this case, this does not

end our inquiry. In *Mallard v. United States District Court*, 490 U.S. 296, 310 (1989), the United States Supreme Court held that 28 U.S.C. § 1915(d) did not authorize federal courts to require unwilling attorneys to represent indigent litigants in civil cases. Because the trial court had assigned counsel pursuant to § 1915(d) ("court may *request* an attorney to represent" indigent litigant) (emphasis added), the Court granted assigned counsel's petition to withdraw. The Court explicitly declined to address whether the trial court had inherent authority to compel an unwilling attorney to render service because the court had not invoked its inherent authority.[2] See *id.*

In the instant case, the court did not state the source of its authority to appoint Mr. Buckman, and Mr. Buckman did not appeal from the denial of his motion to withdraw. Instead, the Defender General moves on appeal to withdraw on the ground that this Court has no authority under the public defender act to appoint him. The Defender General has not challenged the Court's inherent authority to appoint attorneys to represent indigent litigants. This Court has previously noted that it has the inherent "power to require attorneys to serve and protect the vital interests of uncounselled litigants where circumstances demand it." *Caron v. Betit*, 131 Vt. 53, 55, 300 A.2d 618, 619 (1972). Public defenders, like all members of the bar, are subject to such appointment. Accordingly, we deny the motion to withdraw.

■ Trial courts may not, however, routinely assign public defenders to all civil contempt proceedings against indigent litigants. More than an occasional case would unduly interfere with their statutory caseload; further, it would be inequitable to require any one segment of the bar to bear the entire burden of providing representation in these cases. Some of the demand may be met by attorneys offering pro bono services, and we support the continuation of such practice. The burden of funding constitutionally required legal representation, however, rightfully rests upon the Vermont community as a whole, not simply a few members of the bar. See *State ex rel. Scott v. Roper*, 688 S.W.2d 757, 767 (Mo. 1985) (en banc) (holding it unjust that handful of

---

[2] In *Mallard*, four justices dissented, however, stating that "a court's power to require a lawyer to render assistance to the indigent is firmly rooted in the authority to define the terms and conditions upon which members are admitted to the bar." 490 U.S. at 312 (Stevens, J., dissenting, joined by Marshall, Blackmun, and O'Connor, JJ.). In addition, Justice Kennedy stated, in a concurring opinion, that lawyers have a professional obligation to accept a court's request to represent an indigent litigant. *Id.* at 310-11 (Kennedy, J., concurring).

individuals should bear burden that is properly burden of whole community).

Only the Legislature may provide a comprehensive plan addressing the need for legal counsel in civil contempt proceedings. The courts have no other alternative at this point than to exercise their inherent power to assign counsel to represent persons constitutionally entitled thereto.

*Affirmed; the Defender General's motion to withdraw is denied.*

**Morse, J.,** concurring. Although I concur in the Court's holding affirming the judgment of contempt, my analysis of the issues differs substantially from that of the Court.

I agree that defendant was not unconstitutionally deprived of the right to counsel, but the reason, in my view, is because he was not entitled to a court-appointed lawyer. The United States Supreme Court has never held that the Due Process Clause of the Fourteenth Amendment requires the appointment of counsel in a civil contempt proceeding for nonpayment of child support. Nevertheless, this Court so holds today, relying on the recent decision in *Choiniere v. Brooks*, 163 Vt. 625, 660 A.2d 289 (1995) (mem.). *Choiniere* was a summary entry order, which merely noted that a majority of jurisdictions have found in favor of the right to appointed counsel in these circumstances; indeed, the right-to-counsel issue was raised sua sponte by the Court and was neither briefed nor argued by the parties. Not surprisingly, the entry order contains no meaningful discussion or analysis of the issue. Significantly, it omits any mention whatsoever of the contrary view held by a minority of jurisdictions, a view that, as explained below, is both pragmatic and constitutionally sound.

I also agree with the Court's decision upholding the appointment of the public defender. Contrary to the Court's judgment, however, I believe that the public defender act authorizes such appointments. Accordingly, I do not perceive the necessity, nor do I join in the Court's call, for comprehensive legislative reform in this area.

## I. Right to Counsel

The United States Supreme Court has held that the right to appointed counsel arises "only where the litigant may lose his physical liberty if he loses the litigation," *Lassiter v. Department of Social Servs.*, 452 U.S. 18, 25 (1981), and has qualified the right by observing that as a litigant's interest in "personal liberty diminishes, so does his right to appointed counsel." *Id.* at 26. Thus, in *Gagnon v. Scarpelli*, 411 U.S. 778 (1973), the Court declined to hold that indigent

probationers have a right, per se, to a lawyer at probation revocation hearings, notwithstanding the fact that they face possible incarceration if found to have violated probation. The Court noted that the defendant in such cases has already been sentenced; that in most cases the factual inquiry is simplified by the defendant's conviction of another crime or admission of the probation violation; that while the defendant may offer evidence to explain or mitigate the offense "evidence of this kind is often not susceptible of proof or is so simple as not to require either investigation or exposition by counsel," *id.* at 787; and that the introduction of counsel would "alter significantly the nature of the proceeding" by turning it into a full-blown adversarial hearing, prolonging the decisionmaking process and incurring substantial financial costs to the state. *Id.* at 787-88. Although the presence of counsel was thus "undesirable and constitutionally unnecessary in most revocation hearings," *id.* at 790, the Court acknowledged that there may be some cases where the nature or complexity of the evidence or the issues required the presence of a state-appointed attorney for the defendant to be fairly represented. *Id.* at 786-88. Therefore, the Court concluded that "the need for counsel must be made on a case-by-case basis in the exercise of a sound discretion by the state authority." *Id.* at 790. Counsel should be presumptively provided, the Court explained, in those cases where the probationer requests such assistance based on a "colorable claim" that the probationer did not commit the alleged violation, or where, even if uncontested, "there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present." *Id.*

It is against this decisional backdrop that the Supreme Court has more recently described the right to counsel as a "presumption" where physical liberty is at issue, which must be balanced in each procedural setting against the private and governmental interests at stake, and the risk that the procedures used will lead to erroneous results. *Lassiter*, 452 U.S. at 27-28. In *Lassiter* itself, the issue was not personal freedom, but parental rights. Nevertheless, in view of the important parental and state interests at stake, and the parties' joint interest in a correct decision, the Court adopted the standard found appropriate in *Gagnon*, leaving the decision "whether due process calls for the appointment of counsel for indigent parents in termination proceedings to be answered in the first instance by the trial court, subject, of course, to appellate review." *Id.* at 32.

## II. Civil Contempt

Here, we are concerned with a civil contempt proceeding stemming from the violation of certain court-imposed conditions in connection with a child support order. The trial court found defendant in contempt for violating the court's directives, further found that defendant had failed to satisfy the stated conditions necessary to purge himself of the contempt, and ordered him incarcerated. To evaluate defendant's right to a court-appointed attorney in these circumstances requires some attention to the nature of a civil contempt, and the specific procedural setting in which it arises.

Originally a common-law mechanism to enforce court orders and decrees, *Andrew v. Andrew*, 62 Vt. 495, 501, 20 A. 817, 819 (1890), contempt proceedings are currently authorized by statute "[w]hen a party violates an order made against him in a cause brought to or pending before a superior judge or a county court or the district court after service of the order upon that party." 12 V.S.A. § 122. There are two classes of contempt, civil and criminal, either of which may be punished by imprisonment. See 12 V.S.A. § 123. The two categories are distinguishable principally by the *purpose* of the punishment imposed. "In a criminal contempt the purpose of the commitment is punitive and in a civil contempt the purpose is coercive." *In re Sage*, 115 Vt. 516, 517, 66 A.2d 13, 14 (1949). The goal of criminal contempt is simply to punish the defendant "to vindicate the 'authority and dignity' of the trial court." *Bonser v. Courtney*, 481 A.2d 524, 531 (N.H. 1984) (quoting *Scarborough v. R.T.P. Enters.*, 422 A.2d 1304, 1308 (N.H. 1980)). The prison sentence, accordingly, must be definite, *Sage*, 115 Vt. at 517, 66 A.2d at 14, and "no amount of repentance will remit it." *Town of Nottingham v. Cedar Waters, Inc.*, 385 A.2d 851, 854 (N.H. 1978).

In a civil contempt, the purpose of imprisonment is something quite different. There, "the imprisonment is inflicted as a means to compel the party to do some act ordered by the court for the benefit or advantage of the opposite party," *Sage*, 115 Vt. at 517, 66 A.2d at 14, and thus the sentence may be indeterminate until the contemnor complies with the court order. *Id.* "[O]nly compensatory fines or coercive sanctions may be imposed on a civil contemnor," *State v. Pownal Tanning Co.*, 142 Vt. 601, 603, 459 A.2d 989, 990 (1983), and these must be "purgeable," *id.* at 604, 459 A.2d at 991, i.e., they must be "capable of being avoided by defendants through adherence to the court's order." *Vermont Women's Health Ctr. v. Operation Rescue*, 159 Vt. 141, 151, 617 A.2d 411, 417 (1992). Thus, it is commonly said

that the contemnor holds the "'keys to the jail'" and stands committed only until the act required by the court is performed. *Bonser*, 481 A.2d at 531 (quoting *Town of Nottingham*, 385 A.2d at 854). The requirement that a defendant must be presently able to perform implies the opposite, as well; the "inability, without fault, to render obedience to an order or decree of a court is a good defense to a charge of contempt." *Socony Mobil Oil Co. v. Northern Oil Co.*, 126 Vt. 160, 164, 225 A.2d 60, 63 (1966).

It is thus readily apparent that the liberty interest at stake in a civil contempt proceeding is qualitatively unique. Unlike the normal criminal prosecution or criminal contempt proceeding, imprisonment in a civil contempt may not be ordered unless it is shown that the defendant has the present ability to comply with the court's directive, and the defendant may further secure immediate release from incarceration simply by acceding to the order. As distinct from the criminal setting, where the defendant has no control over continued incarceration, the defendant's liberty and property interests in the civil context are far less vulnerable; the defendant holds the "key to the cell," and, by definition, may gain release at any time. "[A]s a litigant's interest in personal liberty diminishes, so does his right to appointed counsel." *Lassiter*, 452 U.S. at 26. Because the liberty interest at stake in the civil contempt context is thus limited, the historical "presumption" in favor of the appointment of counsel is substantially weakened.

### III. Other *Lassiter* Factors

Another important factor in determining an indigent's right to an appointed lawyer is the risk of an erroneous decision. *Lassiter*, 452 U.S. at 27-28. Generally, the legal and factual issues in a civil contempt hearing are not complex. Issues relating to the merits of the court's order have already been adjudicated; the only questions before the court are thus whether the defendant has violated the order and has the present ability to comply. In a support enforcement proceeding, the issues are singularly uncomplicated and straightforward; arrearages are simple accounting matters and rarely are subject to substantial dispute. The plaintiff, be it the custodial spouse or the Office of Child Support (OCS), will rarely have the occasion to call expert witnesses or to take advantage of OCS counsel's superior advocacy skills. The violation is often uncontested, and the defendant seeks merely to explain or mitigate his conduct. As the Supreme Court has observed, "evidence of this kind is often not susceptible of

proof or is so simple as not to require either investigation or exposition by counsel." *Gagnon*, 411 U.S. at 787. Thus, the presence of a court-appointed attorney for the defendant will not, in reality, enhance the accuracy of the court's findings or reduce the risk of erroneous results. See *Lassiter*, 452 U.S. at 27-28.

Finally, the "financial cost to the State" of assigning counsel in every civil contempt proceeding where incarceration is a possibility must be weighed against the potential benefit of a more reliable adjudication. *Gagnon*, 411 U.S. at 788. As I have elsewhere observed, "due process cannot be made perfect at any price. If added burden is placed on one part of the criminal justice system, a price is exacted from another." *State v. Porter*, 164 Vt. 515, 522, 671 A.2d 1280, 1285 (1996) (Morse, J., concurring). In view of the fact that most civil contempt proceedings for nonpayment of support pose relatively simple fact questions of compliance and arrears, the requirement that counsel be afforded to all indigent defendants "is simply too big a price to pay for the relatively small marginal gain in 'reliability.'" *Id.*

On balance, therefore, the critical considerations identified by the Supreme Court in *Lassiter* and *Gagnon* weigh against the appointment of counsel in every case in which an indigent may be incarcerated for failure to comply with an order of support. Rather, the flexible standards adopted by the high court in *Gagnon* and *Lassiter* seem most appropriate to this setting. The trial court should have the discretion to evaluate the need for counsel on a case-by-case basis, and decide, based on articulated reasons, whether fundamental fairness requires the appointment of a lawyer to assist an indigent defendant in a civil contempt proceeding for nonpayment of support.

Although, as the Court notes, a majority of jurisdictions have concluded otherwise, it is noteworthy that the states are not unanimous. A number of courts analyzing the Supreme Court precedents have concluded that due process does not require the appointment of counsel in every case where an indigent defendant faces the possibility of incarceration if found in civil contempt for failure to comply with an order of support. These states include Illinois, *In re Marriage of Betts*, 558 N.E.2d 404 (Ill. App. Ct. 1990), *appeal denied*, 567 N.E.2d 328 (1991)\*; Maine, *Meyer v. Meyer*, 414 A.2d 236 (Me. 1980), and

\*There is a split of authority among the Illinois District Courts of Appeal. Compare *Sanders v. Shepard*, 541 N.E.2d 1150, 1156-57 (Ill. App. Ct. 1989) (indigent facing incarceration in a civil contempt proceeding for nonsupport is entitled to appointed counsel per se), with *In re Marriage of Betts*, 558 N.E.2d 404, 422 (Ill. App. Ct. 1990) ("Contrary to the recent decision [in *Sanders*] . . . we conclude that a respondent in an

*Colson v. State,* 498 A.2d 585, 587 n.4 (Me. 1985); New Hampshire, *Sheedy v. Merrimack County Superior Court,* 509 A.2d 144 (N.H. 1986); New Mexico, *State ex rel. Dep't of Human Servs. v. Rael,* 642 P.2d 1099 (N.M. 1982); and Ohio, *In re Calhoun,* 350 N.E.2d 665 (Ohio 1976), and *Courtney v. Courtney,* 475 N.E.2d 1284 (Ohio Ct. App. 1984); see also *Andrews v. Walton,* 428 So. 2d 663 (Fla. 1983) (parent not entitled to court-appointed counsel in civil contempt proceeding because indigent cannot be imprisoned for failure to pay support).

The Supreme Court of New Mexico has succinctly summarized the position of these courts as follows:

> [T]he defendant's liberty and property interests are not as vulnerable in the context of the civil contempt hearing as in the criminal setting. The provision of court-appointed counsel would do little to reduce erroneous decisions here, where the legal and factual issues are not complex. These factors, when added to the state's interests, militate against a rule requiring appointment of counsel in all cases . . . .

*Rael,* 642 P.2d at 1103.

The views expressed in *Rael* are sound. Civil contempt does, in fact, carry built-in safeguards that are sufficient to protect most defendants in most routine enforcement proceedings: the issues are simple; the trial court must find a present ability to comply; the defendant virtually controls the duration of the incarceration. Furthermore, the trial court retains broad discretion to appoint counsel in any case where it appears necessary for a fair presentation of the issues. Thus, the Court need not choose between the extremes of requiring court-appointed counsel in every case, or in none. The flexible standards adopted by the high court in *Gagnon* and *Lassiter* provide the appropriate model for decision here.

## IV. Appointment Standard Applied

Defendant was held in contempt not strictly for failing to make payment under the support order in effect, but rather for failing, as ordered, to take certain specific steps to secure employment, and to prosecute a workers' compensation claim for a back injury which

---

indirect civil contempt proceeding is not entitled to appointed counsel if he or she is indigent, even though the contempt proceeding may result in imprisonment."), *appeal denied,* 567 N.E.2d 328 (1991). Having denied review in *Betts,* which followed *Sanders,* the Supreme Court of Illinois may incline toward the later decision holding that counsel should be appointed only when necessary to a fair hearing.

would have enabled him to pay substantial child-support arrearages. At the initial contempt hearing, defendant admitted that he had not taken the required steps and offered various excuses for his lack of diligence. The court was unpersuaded and held defendant in contempt. It also set forth four specific conditions to purge the contempt. At the next scheduled hearing, the court, after listening to defendant's explanation, observed that "not a lot has changed." The court then expressed an inclination to order defendant's immediate incarceration, but noted that it was constrained under *Choiniere* to appoint counsel if defendant met the financial criteria. Defendant's financial application reported negligible income and no assets. A public defender was duly appointed, who argued, briefly, that defendant had experienced some difficulties in gaining access to transportation and a telephone. The court set a new hearing one month later to provide counsel an additional opportunity to investigate and gather any pertinent evidence. At the new hearing, counsel represented that defendant had taken some minimal steps to purge himself of the contempt, but otherwise offered no evidence that defendant was unable to comply with the remaining provisions. The court ordered defendant to be incarcerated forthwith, but stated that it would order his release upon his demonstrating a willingness to comply with the order. Counsel promptly filed a notice of appeal, and this Court granted a stay of sentence to consider issues relating to defendant's right to appointed counsel.

The facts of this case provide a perfect illustration of the futility of appointed counsel in the typical support enforcement proceeding. The issues were simple and straightforward. The trial court had ordered defendant to diligently pursue his workers' compensation claim. Defendant violated the order, was held in contempt, and failed to satisfy the specific conditions necessary to purge himself of the contempt. Counsel, appointed under compulsion of *Choiniere*, offered no evidence of defendant's inability to comply with the order, and made only perfunctory arguments to excuse defendant's behavior, arguments that were no more effective than those defendant himself had earlier advanced. All that appointed counsel accomplished here was to needlessly prolong the proceeding, consume additional state resources, and blunt the only effective weapon left in the court's arsenal to obtain support payments for defendant's two minor children. The trial court should have been allowed to assess the circumstances and determine whether the appointment of counsel was necessary for defendant's position to be fairly represented. Had

the court been so empowered, I have no doubt it would have concluded, correctly, that counsel was unnecessary to safeguard defendant's right to a fair hearing.

## V. Appointment of Public Defender

Also before the Court is the question of who shall represent indigent defendants in civil contempt proceedings for nonpayment of support. The issue is undoubtedly important to the bar, but otherwise of no great practical significance. Under the approach outlined above, the need for assigned counsel in these circumstances should be quite limited, given the general lack of complexity that characterizes such proceedings. It should also be apparent that in most circumstances a finding that the defendant is sufficiently needy to qualify for the services of appointed counsel would effectively preclude incarceration, since a present financial ability to comply with the support order is a prerequisite to imprisonment. See *Spabile v. Hunt*, 134 Vt. 332, 334-35, 360 A.2d 51, 52 (1976) ("[T]he inability without fault to obey an order of court is a valid defense to a charge of contempt since 'contempt by its very nature is inapplicable to one who is powerless to comply with the court order.'") (quoting *Yoder v. County of Cumberland*, 278 A.2d 379, 390 (Me. 1971)). Absent a threat of incarceration, there is, of course, no constitutional requirement to appoint counsel. Conversely, if the parent has the present ability to pay, the parent may not qualify as a needy person entitled to the services of appointed counsel. Thus, I would expect the number of cases actually requiring court-appointed counsel in this context to be quite small.

Where it does become necessary, I would hold, contrary to the Court, that assignment of the public defender is authorized by the public defender act. 13 V.S.A. §§ 5201-5277. It is true that one provision of the act refers to needy persons charged with "a serious crime." *Id.* § 5231. It does not necessarily follow, however, that the act is limited to criminal proceedings. On the contrary, the broader purpose of the act is plainly to provide counsel to indigent persons faced with a potential loss of liberty, regardless of the precise nature of the proceeding. This is apparent from the provision expressly requiring assignment of counsel in extradition proceedings, habeas corpus and other proceedings where a person is confined in a penal or mental institution and seeks release, and juvenile court matters. See *id.* § 5232. Such proceedings may, but need not necessarily, involve serious criminal charges. As we observed in *In re A.C.*, 134 Vt. 284,

287, 357 A.2d 536, 538 (1976), "so far as the right to assistance of counsel is concerned, juvenile proceedings generally have been placed by the Legislature in the same category with criminal offenses, without distinction as to whether the juvenile proceedings do, or do not, involve an act otherwise criminal." Furthermore, the act provides unrestricted access to assigned counsel in habeas corpus proceedings, which may involve petitioners confined for reasons completely unrelated to "serious crimes." See, e.g., *Allen v. Smith*, 126 Vt. 546, 237 A.2d 354 (1967) (petitioner found in civil contempt and incarcerated for failure to make child support payments, without opportunity to purge contempt, may seek release by writ of habeas corpus); 12 V.S.A. § 3979 (person who disobeys order, decree, judgment, or process of court, and imprisoned for contempt, is entitled to file petition for writ of habeas corpus).

The Legislature, moreover, has expressly charged this Court with the duty to "make such rules as shall further the intent and purposes of" the public defender act. 13 V.S.A. § 5204. To this end, the Court has promulgated Administrative Order 4, governing the "Assignment of Counsel and Payment Therefor by the Defender General." That order states, in part, as follows: "The purpose of these rules is to assure the availability of counsel to *all* persons adjudged in need thereof, confronted by *proceedings which may involve potential loss of personal liberty, irrespective of their ability to pay for such representation . . . .*" A.O. 4, § 1 (emphasis added). Thus, in implementing the "intent and purposes" of the public defender statute, the Court itself has drawn no distinction between criminal and civil matters, but rather has provided broadly for the right to appointed counsel in all "proceedings which may involve potential loss of personal liberty." I cannot imagine better proof of the act's applicability to civil contempt proceedings where incarceration is a possibility and counsel is constitutionally necessary for a fair hearing.

Constitutional rights are not static, but reflect changing perceptions over time of what is fundamentally fair in a civilized society. The scope of the constitutional right to counsel under the Sixth and Fourteenth Amendments has been broadened substantially over the last several decades. The public defender act is, and must be, sufficiently supple to respond to these changing needs. Accordingly, the same administrative order referred to above further provides as follows: "The circumstance that statutory authority of the right to representation by counsel does not appear to reach the matter involved is not to bar the exercise of the inherent power to provide

counsel where it may be constitutionally required." *Id.* This is not, in my view, merely a restatement of the Court's inherent "power to require attorneys to serve and protect the vital interests of uncounselled litigants where circumstances demand it." *Caron v. Betit,* 131 Vt. 53, 55, 300 A.2d 618, 619 (1972). Rather, it is a recognition that merely because a category of cases requiring counsel is not specifically mentioned in the public defender act, does not mean that the Legislature intended to prohibit their assignment when necessary to protect the liberty interests of indigent defendants. That is, after all, the fundamental purpose of the act, and it does no violence to the letter or spirit of the law to extend the services of public defenders to defendants threatened with incarceration in civil contempt proceedings, where necessary to protect their constitutional right to a fair hearing.

In sum, I would accord trial courts broad discretion, under the standards outlined above, to determine whether the appointment of counsel in a civil contempt proceeding for nonpayment of support is necessary to provide a fair representation of the defendant's position. Because an assigned counsel was not, in my view, constitutionally compelled in this case, I concur in the decision affirming the judgment of contempt. In other cases where the assignment of an attorney becomes necessary, the office of the public defender, or appointed counsel as prescribed by 13 V.S.A. § 5272, should normally be assigned to handle the case.