**Pamela A. (Hunt) Spabile v. Paul L. Hunt**

[360 A.2d 51]

No. 143-75

Present: **Barney, C.J., Smith, Daley, Larrow and Billings, JJ.**

Opinion Filed June 1, 1976

*Richard C. White* of *Rexford, Kilmartin & Chimileski,* Newport, for Plaintiff.

*Charles D. Hickey,* Vermont Legal Aid, Inc., St. Johnsbury, for Defendant.

**Smith, J.** The parties in this case were granted a divorce on January 4, 1974. The decretal order rendered by the court specifically provided that the defendant husband, Paul Hunt, pay $40 per week in child support. At the time of the order's issuance, Hunt was employed as a truck driver, taking home approximately $140 a week in wages. The defendant adhered to the dictates of the decree, making the full payments of $40 a week until the week of January 10, 1975, when without explanation he ceased payments entirely. Subsequently, defendant made three payments of $20 each.

Pursuant to V.R.C.P. 80(j), the plaintiff-appellee, Pamela (Hunt) Spabile, filed in Essex Superior Court a motion for enforcement asking that defendant be found in contempt of the divorce decree and that he be required to pay arrearages and attorney's fees. Hearing on this motion was held on April 28, 1975. At those proceedings defendant sought to show that he was financially unable to meet his support obligations and thus was not in willful contempt of the 1974 decree. Defendant testified that he had not been regularly employed since Thanksgiving of 1974 and that he was receiving $86 a week in unemployment compensation benefits. He further stated

that he had weekly expenses of $65 and that he had attempted to obtain financing in order to make the due payments but had been unable to do so because of his lack of collateral. The superior court in its order dated May 7, 1975, found the defendant to be in arrears in the amount of $580 and concluded that he was in "willful contempt of the divorce order of this Court dated January 4, 1974, in that he has failed to make the support payments required thereunder, although he has been in a position to make payments." Accordingly the court ordered that defendant be committed to the custody of the Commissioner of Corrections for thirty days. However, in its order the court provided that defendant could purge himself of contempt by paying the due arrearages.

Defendant has contemporaneously filed an appeal to this Court from the judgment entered below, and a motion to stay the lower court's order alleging that he lacked the wherewithal to purge himself of contempt. The superior court granted the stay on the condition that defendant pay $200 to the Essex County Clerk. Defendant has done so, and according to an agreement between the parties, this sum was distributed to the plaintiff.

The present appeal poses two questions: (1) Whether the lower court's ruling that defendant was in "willful contempt" is supported by the evidence and the facts found? (2) Whether the court was required to make the finding that defendant had the ability to purge himself of contempt?

The power to punish for contempt is necessarily discretionary in nature. It is, of course, fitting for the lower court to take into account all factors relating to the particular nature of the contemnor's disobedience in determining what action on the court's behalf is required. *LaVoice* v. *LaVoice*, 125 Vt. 236, 239, 214 A.2d 53 (1965). Obviously, what we are concerned with in this case is the imposition of civil contempt since the action of the court below was designed to compel appellant to act for the benefit of the appellee and was not adopted as a means of preventing defendant from committing offenses against the public. *Allen* v. *Smith*, 126 Vt. 546, 547, 237 A.2d 354 (1967); *In re Merton W. Sage*, 115 Vt. 516, 517, 66 A.2d 13 (1949). We accept the proposition that the inability without fault to obey an order of court is a valid defense

to a charge of contempt since "contempt by its very nature is inapplicable to one who is powerless to comply with the court order. It would be utilized against only that person who, being able to comply, contumaciously disobeys, or refuses to abide by, the court order." *Yoder* v. *County of Cumberland*, 278 A.2d 379, 390 (Me. 1971); see also *Socony Mobil Oil Co.* v. *Northern Oil Co.*, 126 Vt. 160, 225 A.2d 60 (1966).

However, if the contemnor alleges that his compliance either with the original order or the purgative conditions is impossible, it is his burden to establish the facts necessary to justify the failure to comply. *Orr* v. *Orr*, 122 Vt. 470, 474, 177 A.2d 233 (1962). The record before us clearly demonstrates that the question of appellant's ability to conform to the provisions of the court's order was raised and argued below. Nowhere, however, in the findings of fact made by the court is there any finding as to appellant's ability to meet his court decreed obligations and thereby purge himself of contempt. Under somewhat similar circumstances the court in *Marshall* v. *Marshall*, 536 P.2d 845, 848 (Colo. Ct. App. 1975) ruled:

> the record shows the court stated that defendant could purge himself of contempt by making the payments which were in default. . . . Therefore, since this was in the nature of a remedial order, it was incumbent upon the court to have found, based on evidence, that defendant not only refused to pay but also that he was under a present duty to pay *and* had the ability to make the ordered payments.

Thus a finding of noncompliance with a court order by itself is insufficient to provide a basis for exercise of the contempt power. As this Court ruled in *Randall* v. *Randall*, 129 Vt. 432, 436, 282 A.2d 794 (1971):

> If there are circumstances justifying the penalty of imprisonment, the findings should so show, bearing in mind it is to be punishment for contemptuous conduct, not merely a debt-collecting device.

It appears certain, then, that the findings of fact made by the court below are deficient in that they fail to contain any

finding as to the ability of the appellant to comply with the conditions set out by the court in its order. In reaching this conclusion we bear in mind that the adjudication of contempt properly lies within the careful exercise of the trial court's discretion and the exercise of that discretion is to be accorded great weight when challenged on appeal. *Brooks* v. *Brooks*, 131 Vt. 86, 92, 300 A.2d 531 (1973). However, our decision here is influenced by the realization that what is at stake is appellant's freedom. Proceedings, like those involved in the instant case, which may result in the imprisonment of a party must be kept under the strict scrutiny of the court. *Randall* v. *Randall, supra*, 129 Vt. at 435. Where, as here, the question of present ability has not been adequately dealt with by the court in its findings, the case should be remanded so that the issue may be given due consideration. Accordingly the order of the Essex Superior Court is vacated and the cause remanded for further determinations in accord with the views expressed in this opinion.

*The order of the Essex Superior Court is vacated and the cause remanded for further determinations in accord with the views expressed in this opinion.*