### Colin V. SHEEHAN v. Dorothy D. RYEA

[757 A.2d 467]

No. 00-084

May 31, 2000. Defendant Dorothy Ryea appeals from the Chittenden Family Court's judgment of civil contempt ordering her "to be incarcerated for a period of sixty (60) days, or until the sum of $2,147.88 is paid." She argues that the court erred because she has no present ability to pay. We reverse and remand.

Defendant and two of her children reside with Dennis Girard, who earns a wage of $9.50 an hour. Her former husband, Colin Sheehan, has custody of her third child, Jessica Sheehan. Defendant is required by an October 4, 1993 child-support order to pay $178.99 per month in support of Jessica Sheehan. In March 1999, as a result of defendant's failure to pay this support, the Office of Child Support (OCS) filed an enforcement action. The court heard the matter on June 2, 1999, and issued a child-support order that required defendant, in addition to providing child support, to (1) apply for social security benefits; (2) secure an appointment with the State Department of Employment and Training to address her underemployment; (3) file a tax return for 1997 with the court; and (4) provide an assessment from her doctor, who had been treating her for disabling pain from a chronic back condition. At the next hearing, the court found defendant in contempt for her continued failure to pay child support and her failure to comply with the June 2 child-support order. The

contempt order, dated October 29, 1999, declared that defendant could purge herself of contempt with a payment of $2,147.88 to OCS and, if payment was not made, the court would issue a mittimus for her arrest.

Defendant did not pay the purge amount and, at the mittimus hearing, testified that she did not (1) apply for social security because she attempted to find employment and believed that she could not receive social security while working, (2) file her tax return with the court because of problems obtaining her W-2 forms from the Internal Revenue Service, and (3) obtain an assessment from her doctor because he had told her not to work. Defendant testified that she had recently held jobs, but had voluntarily quit due to her back condition. She asserted that she had met with a vocational rehabilitation representative, but did not follow through with the proposed plan.

The court found that, although defendant claimed that she is trained as a medical assistant, she did not seek employment in that field. The court also noted that defendant did not provide any medical evidence of her inability to work. After the family court denied her request to stay its contempt order, this Court granted a stay pending appeal.

Civil contempt is a coercive measure, see *In re C.W.*, 169 Vt. 512, 516, 739 A.2d 1236, 1239 (1999), which is necessarily discretionary. See *Spabile v. Hunt*, 134 Vt. 332, 334, 360 A.2d 51, 52 (1976). In comparison to criminal contempt, where the court's purpose is to punish, the court using civil contempt seeks to compel compliance with a court order. Imprisonment of indefinite duration may be the means to compel a party to do some act ordered by the court, and the party must be released on compliance with the order. Cf. *In re Sage*, 115 Vt. 516, 517, 66 A.2d 13, 14 (1949). We have characterized civil contempt as follows:

> [O]nly compensatory fines or coercive sanctions may be imposed on a civil contemnor, and these must be purgeable, i.e., they must be capable of being avoided by defendants through adherence to the court's order. Thus, it is commonly said that the contemnor holds the keys to the jail and stands committed only until the act required by the court is performed.

*Russell v. Armitage*, 166 Vt. 392, 407-08, 697 A.2d 630, 640 (1997) (Morse, J., concurring) (quotations and citations omitted).

Here, however, the court failed to provide defendant with "a key to the jail," except to pay an amount of money. The court found that:

> Defendant is in contempt of the child-support order of June 2, 1999, in that she has failed to pay child support in accordance therewith, she failed to apply for Social Security Disability benefits, she failed to secure an appointment with Department of Employment and Training . . . to address her underemployment, she failed to file a tax return for 1997 with the [c]ourt, and she failed to provide the results of an assessment by Dr. B[auman].

The court did not address defendant's ability to pay $2,147.88. "[C]ivil contempt may not be ordered unless it is shown that the defendant has the present ability to comply with the court's [underlying] directive, and the defendant may further secure immediate release from incarceration simply by acceding to the order." *Russell*, 166 Vt. at 408, 697 A.2d at 640. Instead, the court found that the requirements, enumerated in the June 2 order — application for Social Security Disability

benefits; meeting with the Department of Employment and Training; filing a tax return for 1997; and obtaining an assessment from Dr. Bauman, all of which underpinned or related to defendant's acquiring the ability to pay child support — were not satisfied. Incarceration until payment of $2,147.88 would not coerce defendant to perform these directives, nor would she have purged the order of contempt had she complied with them.

The "key to the jail" in this case was the payment of $2,147.88. Failure to pay meant that defendant would serve the full sixty days in jail. For defendant, without an ability to pay that sum, this amounted to punishment akin to criminal contempt. See *International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 828-29 (1994) (fixed sentence of imprisonment is punitive and criminal if imposed retrospectively for completed act of disobedience such that contemnor cannot avoid or abbreviate confinement through later compliance). Defendant may well have deserved the court's finding her in criminal contempt; however, the court did not pursue criminal sanctions.

*The order of contempt is reversed, and the cause remanded for further proceedings.*

**Skoglund, J.,** dissenting. The history of this case is as set forth in the majority's decision. I submit, however, that the trial judge made an oral finding of a present ability to pay when she found defendant in contempt at the hearing on February 29, 2000. The court stated that defendant was "purposefully not paying child support, although she would have the ability to pay some." Further, the trial judge subsequently produced a written decision in this matter, issued March 10, 2000, wherein she made specific findings documenting defendant's willful refusal to comply with any of the child support orders issued by the magistrate or the

court, and found: "Although Defendant has the ability to do so, she willfully failed to pay the purge amount of $2,147.88, without good cause shown." Therefore, defendant has the keys to the jail. I would affirm the trial court's ruling and make her use them.