STATE OF VERMONT
SUPERIOR COURT — ENVIRONMENTAL DIVISION

| | | |
|---|---|---|
| | ) | |
| Town of Northfield, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Docket No. 218-10-08 Vtec |
| | ) | |
| Lawrence Drown, Jason Law, | ) | |
| Jacob Dorman, and Kenneth Strong, | ) | |
| Defendants. | ) | |
| | ) | |

## Decision on Post-Judgment Motions

Now pending before the Court are several post-judgment motions, all of which relate to our April 6, 2010, Judgment Order[1] that memorialized the Court's award of injunctive and monetary relief to the Town of Northfield ("Town") against Defendants Lawrence Drown, Jacob Dorman, and Kenneth Strong. Town of Northfield v. Drown, No. 218-10-08 Vtec (Vt. Super. Ct. Envtl. Div. Apr. 6, 2010) (Durkin, J.) [hereinafter Apr. 6, 2010 J. Order]. The Court's injunctive and monetary awards were preceded by the Court's previous rulings that the named Defendants had violated Town zoning and subdivision regulations, as specified in three notices of alleged violations ("NOV") served upon each of the Defendants. See Town of Northfield v. Drown, No. 218-10-08 Vtec (Vt. Envtl. Ct. Sept. 4, 2009) (Durkin, J.).

The Town subsequently complained that the named Defendants, and particularly Defendant Drown, had failed to comply with this Court's April 6, 2010 Judgment Order and should be held in contempt. The Town first requested on April 8, 2011, that Defendants be found in contempt of the Court's prior Judgment Order due to non-payment and non-compliance. After conducting an evidentiary hearing on May 24, 2011, this Court granted the Town's request and issued a Contempt Order on July 12, 2011 against Defendants Drown, Dorman, and Strong.

By December 2011, the Town concluded that Defendants still had failed to take all actions necessary to satisfy the Court's April 6, 2010 Judgment Order directive to bring their

---

[1] The Court also issued a Corrected Judgment Order to correct a representation to "Defendant Strong" when "Defendant Dorman" was the proper reference; the Corrected Judgment order did not impact Defendant Drown. See Town of Northfield v. Drown, No. 218-10-08 Vtec, slip op. at n. 1 (Vt. Super. Ct. Envtl. Div. Oct. 20, 2010) (Durkin, J.).

joint properties into compliance. The Town therefore filed the pending motion, seeking an additional finding of contempt.

It appeared undisputed from the testimony presented at our two-day hearing on the pending post-judgment motions that Defendant Drown had worked on the clean up of the property and that he had removed all or nearly all of the junk and other material referenced in the NOV served on him. However, it also appeared that Mr. Drown subsequently deposited other debris on the property after another property of his was damaged on and after August 29, 2011 by Tropical Storm Irene. It also was undisputed at hearing that Defendant Drown had not made any payment of the assessed fines and Defendants Dorman and Strong had only made partial payments on the fines assessed by the April 6, 2010 Judgment Order.

Based upon these representations of non-compliance, the Town on December 9, 2011 filed a contempt request entitled "Motion for Arrest Warrant and Mittimus and Motion for Judgment." In response to the Town's assertion that Defendants' contemptuous non-compliance with the Court's April 6, 2010 Judgment Order warranted incarceration of up to two years, Defendant Drown sought assignment of defense counsel at public expense. The Court granted Defendant Drown's request by Entry Order filed January 23, 2012, citing the precedent of Russell v. Armitage, 166 Vt. 392, 397 (1997). The Court subsequently denied Defendant Strong's request for assignment of counsel at public expense when the Town revealed that it no longer intended to seek incarceration for either Defendants Strong or Dorman. See Town of Northfield v. Drown, No 218-10-08 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Mar. 12, 2012) (Durkin, J.). The Court nevertheless repeated its encouragement that all Defendants seek out assistance from legal counsel, including through the Vermont Volunteer Lawyer Project. Id.

The Court thereafter scheduled a hearing on the Town's pending motion. Josh O'Hara, Esq. and Kelly Green, Esq., entered their appearance for Defendant Drown, but only for the limited purpose of responding to the Town's pending motion. In response to the Town's pending motion, Attorneys O'Hara and Green on April 24, 2012, filed a motion for Relief from Judgment on behalf of Defendant Drown. The Court thereafter set a joint hearing on all pending motions. That hearing began on May 1, 2012 and was completed on May 2, 2012.

Defendant Strong appeared at hearing with private legal counsel: Daniel Richardson, Esq. The Town continues to be represented in this matter by Diana L. Atwood, Esq.

The Court initially responded to Defendant Drown's motion for relief from judgment by an Entry Order filed on April 27, 2012, in which the Court deferred its final decision on Defendant Drown's motion until after the scheduled motions hearing, noting that the Court

> has not dismissed as untenable the representations about Defendant Drown's cognitive problems, as represented in his recent pleadings. We will therefore allow Defendant Drown to present Dr. Jonathan Weker as his expert witness at the now-scheduled hearing, reserving any final determinations as to the relevancy, credibility, <u>and procedural propriety of his testimony</u> until all parties have had an opportunity to present their respective arguments.

> We offer the following note of caution, however. The Court's own research has not revealed any precedent for the specific relief that Defendant Drown suggests: that a trial court vacate a final judgment, based upon assertions made four [sic; should read "two"] years after such judgment was entered, due to an alleged mental impairment that has not yet been defined as so debilitating as to render the patient incompetent at that time of the past trial.

<u>Town of Northfield v. Drown</u>, No 218-10-08 Vtec, slip op. at 1 (Vt. Super. Ct. Envtl. Div. Apr. 27, 2012) (Durkin, J.) (emphasis added).

Multiple additional post-trial motions were filed by the parties, all of which the Court has addressed in various entry orders, with the exception of the Town's motion and Defendant Drown's motion, both specifically mentioned above. At hearing, the Town objected to the presentation of testimony by Defendant Drown's medical expert, Dr. Jonathan Weker. The Town specifically requested a postponement of the motions hearing, so that the Town may have an opportunity to depose Dr. Weker and prepare a cross-examination and any rebuttal testimony. Rather than postponing the motions hearing, the Court allowed Defendant Drown, through his attorneys, to present the direct testimony of Dr. Weker. Once that direct testimony presentation was completed, the Court recessed the hearing and promised to determine whether and how the hearing would resume, so that the Town could conduct its cross-examination of Dr. Weker and present any necessary rebuttal testimony.

Due to the Court's own schedule, it has allowed these post-judgment motions to remain outstanding for some eight months since the parties filed their final post-hearing memoranda.[2] The undersigned regrets allowing this delay to occur and apologizes to the parties for this delay. We issue this Decision with the intention of addressing all outstanding post-judgment motions.

---

[2] The last filing docketed was the Town's memorandum in response to Defendant Strong's motion to dismiss and purge contempt charges against him, filed on June 19, 2012.

While Defendant Drown's motion for Relief from Judgment was one of the last motions to be filed in this Docket, we address it first, since the outcome on Defendant's motion could determine whether the Town's contempt requests are considered. We therefore first address Defendant Drown's motion, then the Town's motion, and then a motion for relief from Defendant Strong that was filed after the completion of testimony during the May 2, 2012, hearing. (See Mot. to Dismiss and Purge Contempt, filed May 14, 2012.)

Defendant Dorman has received notice of these post-judgment proceedings, but has chosen not to appear or to respond in any way to the pending motions.

**A.** **Drown Motion for Relief from Judgment.**

Defendant Drown first seeks relief from the 2010 Judgment Order pursuant to V.R.C.P. 60(b)(6)[3] by alleging that the 2010 Judgment Order should be vacated because:

1.) the assessed fines that now remain unpaid total "over $50,000.00, including interest, are inequitable because they are disproportionate to the harm, if there is any, caused by Mr. Drown's violations;"

2.) the fines are excessive, particularly when compared to fines that this Court has issued in other enforcement cases; and

3.) since Mr. Drown has suffered from "cognitive problems," for a period of time preceding the 2010 Judgment Order and thereafter to such an extent as to make it "difficult, if not impossible" for Mr. Drown to have adequately defended against the Town's prosecution, or to comply with or respond to the Court orders issued in 2009, 2010, and 2011."

(Mot. for Relief from J. at 7, filed Apr. 24, 2012.)

We first address Defendant Drown's claims that the assessed fines are inequitable and excessive. For the reasons explained below, we conclude that Defendant Drown's characterizations are inaccurate and based upon an incomplete recitation of the procedural history of this Docket.

Defendant Drown's responses to the Town's prosecution of his zoning violations did not follow the norm of many zoning violation cases that come before this Court, but his defense strategies were in no way unique. Many property owners who face claims of zoning violations will seek to cooperate with municipal officials to determine what uses or structures on their property constitute zoning violations and attempt to bring their property into compliance before the enforcement action goes to trial. Some property owners, similar to Mr. Drown,

---

[3] This Court's proceedings are governed in part by the Vermont Rules of Civil Procedure. V.R.E.C.P. 3.

contest the zoning violation claims, taking a gamble that this Court will find no violation of the applicable zoning regulations. When this Court finds no violation, the property owner is not subject to any fines. However, when this Court concludes that the property owner is in violation, fines may apply. Put another way, when a property owner contests a zoning violation claim without also seeking to remedy the alleged violation, he or she risks accruing ongoing fines. In such a case, when the property owner continues to contest a zoning violation claim through trial before this Court and is found to be in violation, he or she can become subject to substantial fines. These substantial fines are the direct result of the property owner's decision to gamble that this Court will find that no zoning violation existed. While this decision is entirely within the rights of the property owner, he or she cannot persuasively cry foul if, in the end, this Court finds that zoning violations exist and levies accumulated fines.

Mr. Drown belongs in the class of property owners who have been found in violation of the applicable zoning laws and who have chosen to ignore rather than remedy their violations through the date of trial. As a result, this Court finds his claims that the fines levied against him are inequitable and excessive to be unconvincing.

Moreover, Mr. Drown's zoning violations, as found by this Court, were material, multiple, and continuous. He (1) secured conditional use approval for a development on his property, but then did not abide by the terms of that approval; (2) established and maintained a junkyard on his property; (3) brought a travel trailer on his property without securing a necessary permit for it; (4) failed to plant trees intended to screen his neighbors from the adverse visual impacts of his development as required by the prior conditional approval; and (5) subdivided his land and sold off the newly created parcels without receiving any sort of subdivision approval. Town of Northfield v. Drown, No. 218-10-08 Vtec, slip op. at 4, (Vt. Envtl. Ct. Sept. 4, 2009) (Durkin, J.). Mr. Drown, through the motion and memoranda filed on his behalf by his attorneys, minimalizes these zoning violations as being "disproportionate to the harm, if any" that they caused. We take exception to this characterization; it appears more revisionist than tied to the actual circumstances of Mr. Drown's and his compatriots' actions. Mr. Drown's zoning violations, as found by the Court in 2009, were substantial and egregious. His flouting of the applicable land use laws required response and prosecution, at great cost to the Town, and caused environmental risks and anxiety to his neighbors.

5

Mr. Drown's zoning violations are by no means the most egregious violations that this Court has seen, and that is why this Court did not award the Town the maximum fines that it was authorized to award. At the time that it entered judgment against Mr. Drown, this Court was empowered to award up to $100.00 for each day that each individual zoning violation continued. 24 V.S.A. § 4451(a).[4] Thus, given that the Court concluded that Mr. Drown had committed five distinct zoning violations, this Court could have imposed a fine of up to $500.00 per day for the combined zoning violations. Instead, this Court imposed a fine of $35.00 per day. Apr. 6, 2010 J. Order at 3.. The Town initially requested fines at the maximum allowed rate and at trial suggested a daily fine of at least $60.00 per day; the Court declined the Town's request and imposed fines at just over half that rate.

The Court first announced its determination that Mr. Drown had committed multiple zoning violations in September 2009; it then sought to determine what fines and injunctive relief, if any, should be awarded to the Town. At various parties' requests, including Mr. Drown's, the Court continued the evidentiary hearing on fines and injunctive relief until March 17, 2010, thereby affording Mr. Drown and his Co-Defendants a seven-month opportunity to consult with others, take any remedial measures, and prepare for the evidentiary hearing on fines and injunctive relief. Mr. Drown, as is his right, chose to focus his energies on challenging the Town's claims and asserting that no fines or injunctive relief should be awarded. Mr. Drown's trial strategy ultimately proved unsuccessful and caused both he and Town officials to invest considerable additional time and incur considerable additional expense.

When this Court first assessed fines against Mr. Drown in our April 6, 2010 order, the total fine amount was $21,595.00, a fraction of the amount Defendant Drown now contests. The Court arrived at that initial figure after concluding that Mr. Drown allowed his various zoning violations to continue for 617 days, and we assessed additional fines to accrue in the future at that same rate of $35.00 per day until Mr. Drown remedied the zoning violations. The Court had hoped that these additional fines would provide an incentive to Mr. Drown and his Co-Defendants to bring their properties into compliance with applicable zoning regulations. The fines did not have that effect, and in total have accrued to exceed over $50,000.00 against Mr. Drown. They climbed to that significant amount only because Mr. Drown declined to either

---

[4] Section § 4451(a) has since been amended to authorize fines of up to $200.000 per day for each zoning offense.

make any payment on the fines or, until just before our hearing on the pending motions, clean up the zoning transgressions on his property. For all these reasons, we conclude that the fines assessed against Mr. Drown are neither inequitable nor excessive.

We next turn to Mr. Drown's claims that our 2010 Judgment Order should be vacated because he suffers from cognitive problems. First, we note that our Judgment Order was not successfully appealed and has become final. The finality of that Judgment Order may only be vacated under the limited terms enumerated in V.R.C.P. 60. Defendant Drown's attorneys suggest that our 2010 Judgment Order should be vacated pursuant to subsection V.R.C.P. 60(b)(6), which provides that "upon such terms as are just, the [trial] court may relieve a party or a party's legal representative from a final judgment, order or proceeding for the following reasons: . . . (6) any other reason justifying relief from the operation of the judgment."

This subsection of Rule 60 is often referred to as the "catch-all" provision, see, e.g., Reporter's Notes—V.R.C.P. 60(b), and may be used where necessary to "prevent hardship or injustice." Bingham v. Tenney, 154 Vt. 96, 99 (1990). We note, however, that Rule 60(b)(6) cannot "serve to relieve a party from its free, calculated and deliberate choices" at trial. Bingham, 154 Vt. at 99. In fact, this Rule has been characterized as an appropriate vehicle of relief only in "exceptional circumstances" and only "in extraordinary situations that warrant the reopening of final judgments after a substantial period of time." Miller v. Miller, 184 Vt. 464, 479 (2008) (internal citations omitted). We have searched but failed to find precedent for the granting of relief from a final judgment under Rule 60(b)(6) in circumstances such as presented by Mr. Drown. Defendant Drown has not provided us with precedent from a civil proceeding that would be applicable here, either.

Dr. Weker provided credible testimony concerning Defendant Drown's cognitive functions. Dr. Weker spoke about his experience and expertise in his field of study and explained his review of the filings in this proceeding, another proceeding in a different Superior Court Division in which Mr. Drown is involved, and records from other doctors who have treated and assessed Mr. Drown.

Dr. Meyer referred to a MRI brain scan performed on Mr. Drown that did not reveal abnormalities. He cited to evaluations of Mr. Drown conducted by other physicians, none of whom, to Dr. Weker's understanding, concluded that Mr. Drown suffered from some mental incompetency. Other doctors have concluded, according to Dr. Weker, that Mr. Drown has

some memory, attention, and cognitive function deficiencies, but Dr. Weker also spoke of Mr. Drown's deficiencies as being "in the less severe half" of a scale of affected individuals. Dr. Weker specifically cautioned that he does regard a patient who exhibits a cognitive function deficiency as incompetent to conduct his own affairs and care for himself.

Mr. Drown has presented himself throughout these proceedings as a healthy, robust individual, 68 years old at the time of our motions hearing, who appears in court, including while representing himself, neatly groomed and clothed. During the latest two-day hearing with assigned counsel, Mr. Drown was well mannered and appeared to regularly confer with his attorneys. He provided credible testimony at that hearing, although his self assessment of his mental functions came across as self-serving. He was coherent and logical in his choices of words and sentence structure.

The Court is not aware of a legal precedent that prohibits civil legal proceedings against a person who may have some cognitive function deficiencies. No such precedent has been offered on Mr. Drown's behalf. In fact, even when a party may suffer from an inability to conduct his own affairs, civil legal proceedings do not cease to function. When a party suffers from a serious mental disability, that person may be the subject of voluntary or involuntary guardianship proceedings, but the ward in such instances does not enjoy immunity from civil prosecution. No such guardianship proceedings have been initiated on Mr. Drown's behalf. We conclude that while Mr. Drown often presented himself as combative, particularly towards Town officials and on occasion obstinate to others, including this Court, he exhibited a complete ability to conduct his own affairs and care for himself. To the extent there was conflicting testimony or other evidence, it did not come across to the Court as credible.

This case presents a unique set of facts, given that the Town now seeks Mr. Drown's incarceration as a consequence of his continued contempt of this Court's civil judgment. But that is where the similarity between these proceedings and criminal proceedings end. There is no credible factual foundation for this Court to conclude that Mr. Drown was unable to conduct his own affairs when this Court entered its Judgment Order in 2010, nor is there credible evidence that he now suffers from cognitive deficiencies so significant as to prevent him from adequately representing himself now or to assist assigned attorneys in his own defense.

We have not been made aware of any legal precedent for vacating a final civil judgment due to an unsuccessful defendant claiming years later that his cognitive deficiencies should be a

8

basis for relieving him from that final judgment, and we do not regard the facts presented by Mr. Drown as providing a sufficient basis for us to create such a precedent. For all these reasons, we **DENY** in its entirety Defendant Drown's motion for relief from judgment.

The Town did not have an opportunity to cross-examine Dr. Weker nor to prepare a rebuttal to his testimony, given Defendant Drown's disclosure of this expert witness just a few days prior to hearing. However, since we have concluded that Defendant Drown's presentation, including Dr. Weker's testimony without any cross-examination, was insufficient to grant the pending motion, we see no need to now allow the Town to pursue cross-examination and rebuttal. We therefore regard the evidentiary hearing as closed and complete our analysis of the remaining post-judgment motions.

B.       **Defendant Strong's Motion to Dismiss and Purge Contempt**

By his post-hearing motion, Defendant Strong represents that he has purged himself of all contempt of the April 6, 2012 Judgment Order. Defendant Strong specifically represents that he has: (1) made three payments totaling $1,036.22 towards the one dollar per day fine imposed against him by the Court; (2) transferred his interest back to Mr. Drown in the illegally-subdivided property at 11 Wall Street; and (3) cooperated with Town officials in an effort to comply with this Court's orders. Neither the Town nor the other Defendants have objected to Defendant Strong's motion, and no party has offered a contradiction of Mr. Strong's representations concerning satisfaction of the terms of the 2010 Judgment Order that run against him.

We recognize that the fines and interest thereon that accrued against Mr. Strong may have been several dollars more than his total payment, but we consider his payments as sufficiently complete. We agree with Mr. Strong that while his initial responses to the Town's enforcement action were not cooperative, since the Court entered judgment in the Town's behalf, Mr. Strong has offered to cooperate on many occasions so that conformance to the injunctive provisions of the Court's judgment could be completed. When the Defendants were unable to satisfy the Town's requirements for securing a permit for the illegally-subdivided land, Defendant Strong ultimately returned the portion conveyed to him back to Defendant Drown, even though Mr. Strong did not receive a return of his $5,000.00 purchase price. For all these reasons, all of which remain uncontested, we hereby **GRANT** Mr. Strong's motion and declare that he has purged himself of his prior contempt of this Court's 2010 Judgment Order.

9

**C.      Town's Motion for Arrest Warrant, Mittimus, and further Judgment.**

By its pending motion, the Town initially requested that, because Defendants Drown, Dorman, and Strong had failed to "purge themselves of **CONTEMPT** of the final Judgment Order issued [on] April 6, 2010[,] . . . that arrest warrants and Mittimuses issue" to incarcerate Defendants for no more than two years or until they purge themselves of their contempt. (Town's Mot. for Arrest Warrant and Mittimus & Mot. for J. at 1 (filed Dec. 9, 2011).)  The Town also requests that the Court update its judgment order to reflect the current amounts due from each Defendant.  Id.

At or just prior to the hearing on the pending post-judgment motions, the Town, through its attorney, verified that the Town did not wish to pursue an arrest warrant and mittimus against either Defendants Dorman or Strong and that the Town only wished to argue for Defendant Drown's incarceration.  We therefore review the legal authority and propriety of incarceration as a response to allegations of Defendant Drown's continued contempt of the civil judgment against him.  For the reasons detailed below, we deny the Town its requested relief.

Defendant Drown has offered no factual contradiction of the Town's allegations that he continues to be in contempt of the injunctive and monetary terms of both this Court's original 2010 Judgment Order, as well as the 2011 Contempt Order, save for his clean up of the debris that previously littered the subject property.  Rather, Defendant Drown has focused most of his response to the Town's motion on his request that the 2010 Judgment Order be vacated pursuant to V.R.C.P. 60(b)(6).  Since we have already concluded that Defendant Drown's Rule 60 motion is without merit, we move to our analysis of the Town's requests.

Civil contempt is a discretionary power vested in a trial court.  Spabile v. Hunt, 134 Vt. 332, 334 (1976).  It is distinguishable from criminal contempt, where the consequence of a finding of contempt is to punish the contemnor; the sole purpose of invoking civil contempt powers, even when temporary incarceration is one of those powers, is to "compel compliance with a court order."  Sheehan v. Ryea, 171 Vt. 511, 512 (2000) (mem.).  When considering whether to find a party in contempt of a prior order, we must determine not only whether that party has not satisfied the order, but also whether the contempt is willful, since a party who does not have an ability to obey a court order cannot be found to be in contempt of that order.  Spabile, 143 Vt. at 335 (explaining that "contempt by its very nature is inapplicable to one who is powerless to comply with the court order [and should] be utilized against only that person

who, being able to comply, contumaciously disobeys, or refuses to abide by, the court order") (internal citations omitted)).

In summary, we regard our task as three-fold: (1) determining whether Defendant Drown has an ability to purge himself of his contempt; (2) whether he remains in contempt of the prior Court orders; and (3) whether the requested exercise of the Court's contempt powers is likely to encourage Defendant Drown to comply with the prior Court orders.

We have already addressed a challenge to Defendant Drown's mental abilities to defend against the Town's enforcement complaint and abide by the prior Court orders. While there appears to be no dispute that Defendant Drown experiences some cognitive difficulties, we have received no evidence, nor any credible expert opinion that his cognitive difficulties are so significant as to prohibit his ability to present his own defense, assist his attorneys in presenting his response to the Town's contempt motion, or to understand his obligations under the prior Court orders. Mr. Drown chose a litigation strategy that ultimately failed, but that failure doesn't prove his current assertions. In fact, his legal strategy through judgment evidenced a dedication and determination that was impressive and evidenced a thoughtful process. Mr. Drown would have been better served by adopting a more conciliatory and respectful response to the Town's claims. But the Court suspects that that is simply not Mr. Drown's style, and has never been since long before these proceedings commenced. We conclude that Mr. Drown's disregard of the Court's prior orders was willful and was not impacted by any cognitive difficulties from which he may suffer.

In fact, Mr. Drown's own actions show a mental, physical, and financial ability to purge himself of the contempt for the injunctive provisions of the Court's prior orders. Specifically, Mr. Drown has completed an initial cleanup of his property and has endeavored to file an application for the needed subdivision permit. His efforts to clean up the site have proved mostly successful, while his efforts to secure a subdivision permit have been incomplete, at best. We suspect that this Court may never know why Mr. Drown in the first instance subdivided and sold off portions of his property without a permit and in the second instance why he is reluctant to file a complete application for a subdivision permit after-the-fact. But his actions clearly show a comprehension of what he was ordered to do, what steps were necessary to complete those tasks, and the ability to do so. We therefore conclude that his contempt of the injunctive provisions of the Court's prior orders was willful.

The testimony presented also showed Mr. Drown's financial capabilities. He was a tradesman with skills that have allowed him to provide for his family, own a home, and make investments in several real estate parcels. While some of his real estate investments have recently proved less beneficial, Mr. Drown continues to have the financial ability to make further real estate investments, having recently (i.e., within the last year and a half) purchased a mobile home and land for $13,000.00 in cash. This property was damaged by Tropical Storm Irene, but Mr. Drown has endeavored to improve the property for possible rental. He has had over the past three years the financial ability to make some partial payments or other satisfaction of the fine provisions from the Court's prior orders, but has simply chosen not to do so. We conclude that Mr. Drown remains in contempt of the financial provisions of our prior orders as well.

The final determination we must make is whether the requested exercise of the Court's contempt powers is likely to encourage Defendant Drown to comply with the prior Court orders. Interestingly, this determination has proven most difficult. There may be some for whom the threat of incarceration serves as a powerful incentive to comply with a prior Court order. But it would be error to simply assume that such an incentive exists in all cases, and we suspect that for Mr. Drown, even incarceration may not prove a sufficient incentive to convince him to comply with the Court's prior orders. More to the point, we received no presentation from the Town that incarceration would accomplish the goal of compliance. We therefore **DENY** the Town's request to issue an arrest warrant and mittimus.

So, what are we left to do in light of Mr. Drown's continued contempt towards this Court's prior orders? It appears that an alternative action may bring about a forced or voluntary compliance: encourage the Town, in its discretion, to foreclose on its judgment lien against all Defendants' rights in the subject property. By doing so, the Town would return title to all of the illegally-subdivided properties to a single common owner (the Town, as the party foreclosing a judgment debt), thereby negating the prior illegal subdivision. The Town will also be entitled to present a claim for all additional costs, including attorneys fees incurred in the course of its foreclosure. See V.R.C.P. 80.1. In the event that the sale of the foreclosed property does not provide sufficient proceeds to satisfy all sums due from Defendant Drown, the Town has the right to request a deficiency judgment. V.R.C.P. 80.1(j)(2). In the event that at the time

12

that the Town's foreclosure is completed the property needs further clean-up, we encourage the Town to include reasonable clean-up expenses in its itemization of foreclosure expenses.

Thus, foreclosure of the Town's judgment lien, updated below, will provide a means by which compliance with the injunctive and fine provisions of this Court's prior orders may be accomplished. We regret that this avenue for compliance has proven so costly, both for the Town and Defendants, but we conclude that the Defendants, particularly Mr. Drown, are the only parties responsible for this result and the added expense.

We now move to the final legal issue presented: the Town's request for an updated judgment order. As noted above, Defendant Strong has purged himself of his prior contempt. We therefore note that Defendant Strong has satisfied the judgment against him and decline any remaining request from the Town that an additional judgment be entered against him.

We otherwise **GRANT** the Town's request for an undated judgment by supplementing our previous orders of April 6, 2010 (as corrected by a judgment Order field October 20, 2010) and July 12, 2011 as noted below.

Neither Defendant Drown nor Defendant Dorman showed that they have made any payments towards the amounts originally due. Our Contempt Order of July 12, 2011 noted that Defendant Drown then owed $25,000.00 in fines, together with interest accruing thereon, and additional fines in the amount of $35.00 for each future day of violation, and that Defendant Dorman owed $550.00, together with interest accruing thereon and additional fines in the amount of $1.00 per day.

The Town presented its calculations that Defendant Drown owed as of the date of our hearing on the pending motions a total of $48,790.00 in fines and $6,716.98 in accrued interest through the date of hearing, for a total then due of **$55,506.98**. The Town presented its calculations that Defendant Dorman owed as of the date of our hearing on the pending motions a total of $1,107.00 in fines and $38.20 in accrued interest through the date of hearing, for a total then due of **$1,145.20**. No Defendant offered credible testimony that the Town's calculations were incorrect or inaccurate; we therefore **GRANT** judgment to the Town and against Defendants Drown and Dorman in these respective amounts.

The Town of Northfield shall have the right to request a further update of the amounts due once it has either completed its foreclosure proceedings against the subject property at 11 Wall Street in Northfield or has concluded that it does not intend to complete those foreclosure

proceedings. Defendants Drown and Dorman remain responsible for complying with all terms of this Court's August 6, 2010 Judgment Order (as corrected on October 20, 2010) and the Contempt Order of July 12, 2011. All provisions of those Orders, other than the amounts due that are updated by this Order, shall remain in full force and effect.

Done at Berlin, Vermont, this 21st day of February 2013.

_____
Thomas S. Durkin, Environmental Judge