Filed 05/08/25

VERMONT SUPERIOR COURT
Environmental Division
32 Cherry St, 2nd Floor, Suite 303,
Burlington, VT 05401
802-951-1740
www.vermontjudiciary.org



Docket No. 24-ENV-00031

---

Town of Plainfield,
        Plaintiff,

    v.

Devin Lynch, Ashley Lynch, and Seth Parry,
        Respondents.

Decision on Contempt

---

    This is a zoning enforcement action brought by the Town of Plainfield (Town) against Ashley Lynch, Devin Lynch, and Seth Parry (Respondents) for unpermitted residential use of a recreational vehicle (RV) on the property located at 79 Bean Road in Plainfield, Vermont (the Property).

    On February 27, 2025, the Court ordered Respondents to cease any unauthorized use of an RV on the Property within 30 days, and to not engage in further residential use of an RV without first receiving Town approval. Town of Plainfield v. Lynch & Lynch, No. 24-ENV-00031, slip op. at 8 (Vt. Super. Ct. Envtl. Div. Feb. 27, 2025)(McLean, J.). The Court's ruling was not appealed and is now final.

    Presently before the Court is the Town's post-judgment motion to hold Respondents, jointly and severally, in civil contempt for failure to comply with the Court's Merits Decision and Judgment Order. The Court noticed and held a show cause hearing on the motion on May 2, 2025. The parties appeared in person at the Costello Courthouse in Burlington, Vermont. In this matter, the Town is represented by Attorney Michael Tarrant. Devin Lynch appeared on behalf of Respondents and is self-represented.

### Findings of Fact

1. The Merits Decision and Judgment Order, which were served on Respondents, each provided: "Respondents shall cease any unauthorized recreational vehicle use on the Property …within 30 days

of this Order. Respondents shall not commence or engage in further residential use of an RV on the Property without first receiving Town approval."

2. The Merits Decision and Judgement Order also warned Respondents that "[f]ailure to comply with this Order may lead to contempt sanctions and future penalties."

3. Respondent, Devin Lynch, read the Merits Decision and Judgment Order and understood that they prohibited residential use of the RV, including overnight sleeping.

4. The 30-day period referenced in the Merits Decision and Judgment Order expired on Saturday, March 29, 2025.

5. Since March 29, 2025, Karen Storey, the Town's Zoning Administrator (ZA), has visited and observed the Property on numerous occasions, at various hours of the day and night.

6. During her visits to the Property, the ZA made the following observations: the RV remains on the Property, a red car is frequently in the driveway (sometimes with snow on it when observed early in the morning), snow is cleared from the driveway area, there are vehicle tracks in the snow from traffic in and out of the Property, and there is a dog living on the property in a dog house behind the RV.

7. The red car, which is owned by a "lady friend" of Mr. Lynch, is present on the Property both in the evening (after 9 PM) and in the very early morning hours (3:30 AM).

8. Following one or more incidents with the dog, a pit bull, including a bite to a person, the Town held a public hearing that required Mr. Lynch to obtain an Animal License. Town's Exhibit C. On the license, which is dated March 26, 2025, Mr. Lynch indicated that he was the owner of the dog and that the dog was kept at the Property. Id.

9. On April 1, 2025, the Town, through its counsel, contacted Respondents and warned them that if residential use of the RV did not cease, in accordance with the Court's Merits Decision and Judgment Order, that the Town would pursue contempt proceedings.[1]

10. While the ZA has not personally observed Mr. Lynch at the Property, based on her collective observations she believes that he is and has been living there, including during the period from April 1, 2025 to the date of the hearing on the Town's motion for contempt (i.e., May 2, 2025).

11. Kim Nolan owns property at 134 Bean Road, across the road and "one house up" from the Property. From her home, which is approximately 100-feet away from the Property, she has a clear

---

[1] The Town, in its Motion for Contempt, indicates that, in response to its April 1 warning letter, Respondent Ashley Lynch indicated that she was not living in the RV and that "[h]opefully [Devin] will remove the camper and it all works out." Town's Motion for Contempt at p.3. It is also implicit from the Town's motion that Respondents have not obtained Town approval to use the RV for residential purposes.

2

view of the Property and of the door to the RV located thereon. Visibility is especially clear when the leaves are off the trees.

12. Ms. Nolan has personally observed Mr. Lynch on the Property on numerous occasions. She sees him get in and out of the red car in the morning and evening and frequently sees Mr. Lynch's dog on the Property.[2]

13. From March 29, 2025 to May 2, 2025, Devin Lynch has stayed at the Property, in the RV, almost every night until as recently as last week. Sometimes Mr. Lynch's friend, the owner of the red car, stays with him. Mr. Lynch does not spend a lot of time outside of the RV. When he leaves in the morning or arrives in the evening, he typically goes directly to his car or inside the RV.

14. During the week of the hearing on the Town's motion, Mr. Lynch was at the Property as late as 8 o'clock PM, according to Ms. Nolan's observations, although in the days immediately prior to the hearing he was not sleeping there.

15. There is at least one water hose connected to the RV. While it is not clear whether the RV is connected to electricity, it does use solar lighting. There have been no recent propane deliveries to the Property, but there are several smaller propane canisters stored on the property.

16. Mr. Lynch's mail is delivered to the Property.

17. Mr. Lynch admits that he visits the Property frequently, keeps his dog there, receives his mail there, and keeps certain personal property there, but he contends that he lives in Graniteville, Vermont. He asserts that he visits the property to feed the dog before he starts work with Village Homes at 6:30 AM, and that he also visits after work, but contends that he does not sleep in the RV overnight.

18. As noted above, although Mr. Lynch has recently not been staying the night, the red car owned by his friend has been observed at the Property both in the evening and as early as 3:30 in the morning.

### Discussion

Civil "[c]ontempt sanctions provide courts with a means of coercing a party's compliance with orders where that party has refused to comply." Town of Pawlet v. Banyai, 2024 VT 13, ¶ 6 (citing Sheehan v. Ryea, 171 Vt. 511, 512 (2000)). "Courts have discretion to craft appropriate contempt sanctions to coerce compliance, which may include fines… or other sanctions the court deems appropriate." Id. (citing Mayo v. Mayo, 173 Vt. 459, 463 (2001)). When imposing a coercive sanction

---

[2] Although Ms. Nolan and her husband have had several negative interactions with Mr. Lynch's dog, including being cornered in their garage while the dog acted aggressively, the Court finds her testimony credible regarding the nature, scope and duration of Respondent Devin Lynch's presence on the Property. Similarly, the Court finds the ZA's recent observations of the Property credible.

for civil contempt, the fine must be purgeable such that a Respondent may avoid the fine by coming into compliance with the court's order. <u>Vermont Women's Health Ctr. v. Operation Rescue,</u> 159 Vt. 141 (1992) (citation omitted).

Based on the totality of the evidence, we conclude that Respondents have not ceased all residential use of the RV, such that they are **IN CONTEMPT** of the Court's February 27, 2025 Merits Decision and Judgment Order. Mr. Lynch continues to spend extended periods of time living in the RV. He lists the Property as his mailing address and keeps his dog permanently leashed on the Property. Neighboring landowner, Kim Nolan, has personally observed Respondent entering the RV in the evening and exiting early in the morning. Additionally, the Zoning Administrator has regularly observed a car in the driveway, with indications that it had been present on the Property overnight. Taken together, the evidence demonstrates that Respondent continues to use the RV as a residence.

In response, Mr. Lynch argues that he lives with his sister-in-law in Graniteville, Vermont, and generally only visits the Property to feed his dog before and after work. The Court is not convinced by this argument given the credible observations made by the Zoning Administrator and Ms. Nolan. We understand that Mr. Lynch is often away from the Property during working hours, and that he may have another place to stay in the evenings. However, he has not sufficiently demonstrated an intent to abandon his residential use of the RV.

Additionally, in a post-trial "memorandum" (taking the form of an email), Mr. Lynch suggests that his state issued drivers license lists his address as 215 Pallas Road, Graniteville, Vermont. The Court has not seen an actual copy of Mr. Lynch's drivers license, nor does this fact alone prove that he does not reside in the RV. It is possible for a person to have more than one place of residence. As explained above, the evidence shows that Mr. Lynch is still making residential use of the RV. Accordingly, Respondents are in contempt until more compelling evidence demonstrates that the residential use has ceased.[3]

To achieve compliance, we hereby fine Respondents $45 per day from the date of this decision until they cease all residential use of the RV. While Mr. Lynch may be the primary offender of the Court's Merits Decision, both Ashley Lynch and Seth Parry are jointly and severally liable for this penalty and should take affirmative steps to bring the Property into compliance.

---

[3] To the extent that Mr. Lynch believed that he could comply with the Court's Merits Decision and Judgment Order simply by not sleeping in the RV overnight, he is mistaken. The Court's Merits Decision and Judgment Order required him to discontinue all residential use of the RV without first obtaining Town approval. Sleeping in the RV overnight is but one aspect of residential use.

The Court will set this matter for a follow up hearing approximately 30 days from the date of this Decision. During that follow up hearing Respondents shall have the burden of proving by clear and convincing evidence that they are no longer in contempt.[4] If Respondents prove that the RV is no longer being used as a residence, those fines will be purged and no monetary penalties will be due. However, failure to bring the Property into compliance by the scheduled hearing date will render those fines non-purgeable. In addition to refraining from sleeping overnight in the RV, potential evidence of compliance may include, but is not limited to, changing Mr. Lynch's mailing address, removing the dog and any other pets from the Property, removing any personal belongings from the Property, disconnecting all utility systems (e.g., water, wastewater and electric) from the RV, and/or removing the RV from the lot.

The Town has asked for its attorney's fees in connection with its motion for contempt. The Court will defer ruling on the Town's request until after the follow up hearing at which time the Town should be prepared to present any evidence that it may have regarding its attorney's fees and costs related to the motion.

Electronically signed on May 8, 2025, pursuant to V.R.E.F. 9(d).

Joseph S. McLean
Superior Court Judge
Environmental Division

---

[4] For obvious reasons, it is in Respondents interest to comply, and demonstrate compliance, with the Court's Merits Decision and Judgment Order as early as possible. If, in response to this Decision, Respondents promptly take steps to come into compliance with the Court's prior Merits Decision and Judgment Order, they may request a follow up hearing in less than 30 days to demonstrate their compliance, which the Court will try to accommodate.

5