Filed 12/11/25

VERMONT SUPERIOR COURT
Washington Unit
65 State Street
Montpelier VT 05602
802-828-2091
www.vermontjudiciary.org



CIVIL DIVISION
Case No. 22-CV-02740

| Melissa Fulco et al v. Andrea Spagnoli-Allen |
| --- |

# ENTRY REGARDING MOTION

Title:      Proposed Order for Judgement  (Motion: )
Filer:      Charles S. Martin
Filed Date:      December 08, 2025

A response shall be filed within 14 days.

This is a partition action filed in August of 2022 that involves a parcel of land in Woodbury, Vermont.  Plaintiffs and Defendant are cousins and co-tenants with varying percentage of ownership interests.  Collectively, the three Plaintiffs own interests that total to 90%, and Defendant Andrea Spagnoli-Allen has title to 10%.  Plaintiffs sought partition, in part, because Defendant had not made contributions to the property during the course of her ownership and had not cooperated with the other owners.

**Background Facts**

In November 2023, the parties went to mediation and successfully reached resolution agreeing to resolve the litigation on the following terms: (1) Plaintiffs would pay Defendant $17,500 for her interest in the Woodbury Property; (2) Defendant would deed her interest in the Woodbury property to Plaintiffs; and (3) the parties would release each other from all other claims.

In January 2024, Plaintiffs filed a motion for a status conference based on Defendant's failure to respond and delay in executing a quit claim deed.  In March 2024, the Court held a hearing.  Defendant, at that time, confirmed the terms of the settlement agreement, but she had questions regarding the transfer tax forms.  Plaintiffs agreed on the record to make the adjustments, and the Court ordered the transfer to occur on March 29, 2024.

No closing occurred on March 29, 2024, and Plaintiffs filed a motion for contempt and sanctions on April 8, 2024 for failing to execute the releases and quit claim deed.

The Court issued an Order expressing confusion as to why the closing had not occurred. The Court directed the parties to work toward a mutually agreeable closing date, but it also set a July hearing date on the motion for contempt if no closing occurred.

No closing occurred prior to the hearing, and the Court took up the matter on July 11, 2024. At that hearing, Plaintiffs and Defendant agreed to the following terms:

1.  Plaintiffs agree to pay $1,000 for Defendant to obtain Vermont counsel ("Defendant's Counsel').

2.  Defendant's Counsel will be the closing agent for the sale of Defendant's interest in the camp that is at issue in this case.

3.  Defendant will provide Attorney Martin with the name of Defendant's Counsel no later than three weeks from today, July 11, 2024.

4.  Within a week of that notification, Defendant's provide to Attorney Martin draft closing documents, including a quit tax form, and releases.

5.  Within a week of receiving the draft closing documents, Attorney Martin will indicate Plaintiffs' acceptance of the documents or propose any changes to them.

6.  Final closing documents are to be approved within one week of Plaintiffs' proposals.

7.  Closing is to take place on next business day following approval of closing documents.

8.  All documents and payments needed to be made or exchanged shall occur at the closing.

9.  Failure to comply with the above timelines by Defendant or Defendant's Counsel shall result in a $100.00 per day "fine," which is to be deducted from the purchase amount, which continues to be held in escrow by Plaintiffs' counsel.

*Fulco v. Spagnoli-Allen*, Dckt. No. 22-CV-2740, at 1–2 (Jul. 11, 2024) (Tomasi, J.).

Despite this agreement and direct instructions from the Court to complete the terms of the agreement, no closing occurred. Defendant did not hire legal counsel to represent her and made no efforts to complete the closing envisioned in the agreement. On July 3, 2025, Plaintiffs filed a motion to impose sanctions based on Defendant's non-compliance.

The Court conducted a hearing on October 13, 2025 at which all parties were present. At that hearing, Defendant raised several excuses for her non-performance. The primary excuse was that no Vermont real estate attorney would prepare the quit claim deed and review the general releases that Attorney Martin had prepared on behalf of the Plaintiffs. The Court did not find any of Defendant's excuses to be credible. Defendant admits that she did not follow up with any further efforts once the attorney she contacted refused to help her with both the closing and

the releases. Defendant simply waited, expecting the Court to resolve the matter, but she made no motions to Court. She sought neither accommodations, nor clarifications with either the court or opposing counsel.[1] The record indicates that Defendant has failed to follow through with her obligations on both the original November 2023 settlement agreement as well as the July 11, 2024 agreement.

Notwithstanding these findings, the Court gave Defendant 30 days to obtain an attorney to complete the real estate transaction, and the Court ordered the payment and contempt issues to be continued.

As before, Defendant did not follow through with the Court's directions. At the November 18, 2025 continued contempt hearing, Defendant reported that she had made contact with one attorney who refused to assist her after talking with Attorney Martin. Attorney Martin reported that the attorney had contacted him one day prior to the hearing, and he had informed the attorney that he would be pursuing sanctions.

At this point, the Court is confronted with the following facts. The parties reached a final resolution that they confirmed with the Court to transfer Defendants' interests to Plaintiffs over two years ago. Since then, Defendant has materially failed to comply with her obligations to complete the transaction. Her failure, despite multiple opportunities, has been consistent and complete.

At the November 18th hearing, Plaintiff's counsel offered three ways that he believed this matter could be resolved. The first was through a judgment on the July 11th agreement that he would then use to foreclose against Defendant's interests. The second was criminal contempt that would order Defendant incarcerated until she executed the deed, and the third was voluntary compliance. Plaintiff argued that no other legal mechanism existed to compel the transfer of property. Defendant objected to Plaintiffs' proposals, but she has not proposed any alternative methods, and her past failures indicate that any direction that required her to act would be ill-placed.

Since no such voluntary compliance has occurred, Plaintiffs through counsel, have elected to follow the route of seeking a judgment on the July 11th agreement. This judgment

---

[1] The Court finds that Defendant has used her pro se status in this case as both a sword and shield to thwart any effort to close and then to defend her inaction with the excuse that she, as a non-lawyer, did not know what to do.

would include fines of $46,000 from Section 9 of the parties' July 11, 2024 agreement, attorney's fees of $3,641.40, and a prorated credit for costs associated with the Woodbury property since the agreement.

**Legal Analysis**

The issues before the Court are a mixture of sanctions, contempt, and contract enforcement. As the facts indicate, the parties entered into two agreements in this case. The first was a settlement agreement in November of 2023 arising out of mediation and confirmed by the Court in March 2024. The second was the July 2024 modification that put further terms onto the agreement but reinforced the essential terms requiring Defendant to transfer her ownership interest.

The record indicates that Defendant is in breach of both agreements as well as several orders from the Court to complete the transfer.

Plaintiffs' solution to seek judgment on the July 11, 2024 agreement's penalty provision and then foreclose on the property strikes the Court as an unnecessarily unwieldy. Plaintiff's judgment and foreclosure method ignores the more direct solution offered by Rule 70, which states:

> If a judgment directs a party to execute a conveyance of land or to deliver deeds or other documents or to perform any other specific act and the party fails to comply within the time specified, the court may direct the act to be done at the cost of the disobedient party by some other person appointed by the court and the act when so done has like effect as if done by the party, except that the appointee of the court shall have no authority to execute a conveyance of land outside the State of Vermont. The court may also in proper cases adjudge the party in contempt. If real property is within the state, the court in lieu of directing a conveyance thereof may enter a judgment divesting the title of any party and vesting it in others and such judgment has the effect of a conveyance executed in due form of law, if a copy thereof, certified by the clerk, is recorded in the office in which a deed of such real estate is required by law to be recorded.

V.R.C.P. 70. This Court has issued at least two orders directing Defendant to prepare and convey her interest in the Woodbury property to Plaintiffs. She has failed to comply with these orders, and her basis for not complying is neither credible nor sufficient to excuse her obligation to perform.

Similarly, the proposal to apply the $100 per day penalty provision of the July 11, 2024 order strikes the Court as unduly harsh for three reasons. First, the Court cannot view the

penalty provision, except as a creature of both contract and contempt. This is because the provision was added during a negotiation designed to avoid a contempt hearing, and because it is given the term "penalty." In the context of the agreement, it was clearly intended to enforce compliance rather than to renumerate the Plaintiffs for actual costs. As such, the Court must view this "penalty" as a contractually negotiated contempt provision that was intended primarily as a "stick" to compel Defendant's performance, as opposed to the $1,000 carrot for attorney's fees. Second, Plaintiffs have not adequately explained why they waited over a year to seek enforcement of the July 2024 agreement given that they were aware of Defendant's non-compliance as early as the beginning of August 2024. Third, there has been no evidence of Defendant's ability to pay. *Sheehan v. Ryea*, 171 Vt. 511, 512–13 (2000) (mem.). As *Sheehan* notes civil contempt is a "coercive measure" that is "necessarily discretionary." Id. Only compensatory fines or coercive sanctions may be imposed on a party. Id. (quoting *Russell v. Armitage*, 166 Vt. 392, 407–08 (1997) (Morse, J., concurring)).

Nevertheless, the Court is confronted with Defendant's repeated intransience and refusal to meaningfully abide by the Court's repeated orders. Plaintiffs are entitled to receive the benefit of their agreement, and Defendant's refusal to comply has crossed from mere confusion into contempt. In light of the evidence, the Court is inclined the grant the following relief against Defendant's two-years of intransience.

**First**, the Court will appoint an individual pursuant to Rule 70 to act as an agent for Defendant to sign and execute the deed conveying her interest in the Woodbury property to Plaintiffs within 14 days of his or her appointment. V.R.C.P. 70. The costs of this agent shall come from the $1,000 promised Defendant under the July 11, 2024 agreement to obtain counsel. If the agent's costs or the costs of closing exceed $1,000, then those costs shall be deducted from Defendant's $17,500 purchase price. The Court will allow Plaintiffs as part of their response to this Order to nominate such an agent. If no such nomination is made, the Court will appoint an attorney with some real estate experience. This transfer shall occur as soon as practicable after the designation of the agent.

**Second**, the Court will award Plaintiffs their attorney's fees and costs from April 8, 2024 through the date of any transfer as well as any costs and share of expenses for maintaining the Woodbury property from November 2023 through to the date of closing attributable to Defendant. These costs and fees will be deducted from the $17,500 currently held in escrow by

Plaintiffs. The Court finds these costs and fees to be reasonable damages that Plaintiffs would not have incurred or would have accepted if Defendant had complied with her November 2023 or her July 2024 obligations. *Foti Fuels, Inc. v. Kurrle Corp.*, 2013 VT 111, ¶ 32.

In this case, if Defendant had performed on the 2023 agreement, Plaintiffs would not have incurred additional costs of carrying the property. The 2024 agreement did not alter that reality, but it did exchange some of that costs for a timely transfer that did not occur. The Court finds, as a result, that Plaintiffs should be entitled to collect from Defendant the full carrying costs from the point of the original agreement.

As for the attorney's fees, the Court awards them based on Defendant's on-going violation of this Court's Orders including both the July 11, 2024 Order and the Court's October 13, 2025 Orders requiring Defendant to transfer the properties. As the Vermont Supreme Court has noted, the trial courts may award attorney's fees as part of a contempt ruling, and the amount remains in the discretion of the trial court. *Kneebinding, Inc. v. Howell*, 2018 VT 101, ¶¶ 123–33. In this case the Court finds that while the non-compliance began as early as November 2023, the contempt did not begin until July of 2024 when Defendant began defying this Court's Orders to transfer the property to Plaintiffs in a timely and expeditious manner, and this has continued through the present Order. The July 2024 Order was a direct result of Plaintiff's actions beginning with their April 8, 2024 motion for contempt and sanctions that led to the July 2024 Order. As such, this Court finds that motion to be the reasonable starting point for contempt costs.

The Court also finds that both sets of costs will not require any payment from Defendant but will be deducted from the $17,500 currently being held in escrow. Therefore, there is an inherent ability to pay.

The Court will give Plaintiffs time to amend or augment their damages under this category to reflect any changes as a result of the dates set by the Court. Plaintiffs may present evidence of these damages by affidavit or declaration.

**Third**, Plaintiffs may, as part of their response, put forward any further evidence of harm that they have incurred as a result of Defendant's breach of the July 11, 2024 agreement. Such damages may include incidental and consequential losses consistent with Defendant's breach of contract or that are necessary to compensate Plaintiffs as a result of Defendant's contempt of the Court's July 2024 and October 2025 Orders. *Foti Fuels, Inc.*, 2013 VT 111, at ¶ 32;

*Kneebinding, Inc.*, 2018 VT 101, at ¶¶ 73, 74 (noting that civil contempt sanctions may be used to compensate the victim but that purely prospective contempt fines are generally disfavored).

**Time to Respond**

Given that this remedy and ruling deviates from both what Plaintiffs have proposed as well as what was discussed at the November 18, 2025 hearing, the Court will give both parties 14 days from the date of this Order to file any objections or responses to the proposed Order.

**So Ordered**

Electronically signed on 12/11/2025 9:18 AM pursuant to V.R.E.F. 9(d)

_____
Daniel Richardson
Superior Court Judge